**COMMONWEALTH of Pennsylvania,**
**Appellant**

**v.**

**Kimberly CHERNOSKY, Appellee.**

Superior Court of Pennsylvania.

Argued March 9, 2005.

Filed April 27, 2005.

Nicholas J. Casenta, Assistant District Attorney, West Chester, for Commonwealth appellant.

William R. Hagner, Paoli, for appellee.

Before: HUDOCK, FORD ELLIOTT, JOYCE, ORIE MELVIN, KLEIN, BENDER, BOWES, GANTMAN, and PANELLA, JJ.

OPINION BY BOWES, J.:

¶ 1 This appeal by the Commonwealth is from the trial court's decision to grant a motion to suppress evidence filed by Appellee, Kimberly Chernosky. We reverse.

¶ 2 Initially, we examine the pertinent standard of review:

When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the

context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts. *Commonwealth v. Keller*, 823 A.2d 1004, 1008 (Pa.Super.2003), *appeal denied*, 574 Pa. 765, 832 A.2d 435 (2003) (citation omitted).

*Commonwealth v. Gaul*, 867 A.2d 557, 559 (Pa.Super.2005)

¶ 3 In accordance with these principles, we recite the following facts as integral to the ensuing legal discussion. At approximately 1:00 a.m. on August 16, 2002, off-duty Tredyffrin Township Police Officer Michelle Major was traveling eastbound on Yellow Springs Road, a winding two-lane road, approaching Indian Run Road when she came upon a silver-gray Volkswagen Jetta traveling at a "very slow speed" in the same direction. N.T. Suppression Hearing, 1/28/03, at 7. As Officer Major overtook the Jetta, it suddenly accelerated to forty to forty-five miles per hour, the speed limit. As the Jetta continued eastbound, Officer Major saw it travel off the right side of the road onto the shoulder and "almost" strike a telephone pole. *Id.* at 7. As Officer Major continued to follow the Jetta, she noticed that it went "across the double yellow line" and swerve "back over to the right side of the roadway" on more than one occasion. *Id.* at 9. Officer Major plainly testified that the car "went to the left side of the road, across the double yellow line and also to the right shoulder, the right side of the road." *Id.* at 22.

¶ 4 Based on these observations, Officer Major telephoned 911 and requested that an officer intercept the Jetta, which she continued to follow over the course of several different roads while keeping the radio dispatcher informed of her location. During this time, the Jetta "did not drive in a single lane and drifted over to the left and right side of the road continually." *Id.* at 11. Officer Major could not recall whether there were other vehicles on the road. After approximately five minutes, the Jetta pulled into a private parking lot, and Officer Major stopped on the adjacent public road. Then, Officer Major saw a marked Tredyffrin Township police cruiser, which obviously was responding to her 911 call, and Officer Major signaled that the Jetta was the car to be investigated.

¶ 5 Police Officer Michael Carsello was driving the marked cruiser and heard the radio dispatch that "an off-duty Tredyffrin Township Police Officer was following an erratic driver," and he had followed the dispatcher's instructions to the parking lot. N.T. Suppression Hearing, 2/27/03, at 5. Officer Carsello saw Officer Major point to the stopped Jetta. Officer Carsello approached the vehicle and immediately asked the driver, Appellee, for her license, insurance, and registration. Appellee displayed slurred and rambling speech and had a strong odor of alcoholic beverages on her breath. When asked how much alcohol she had consumed, Appellant responded, "[P]robably around five drinks." N.T. Suppression Hearing, 1/28/03, at 30. Appellee exited the car, failed administered field sobriety tests, and was arrested for driving under the influence of alcohol. Officer Carsello testified that the parking lot where Appellee was arrested was located in Willistown Township approximately a "couple hundred feet" from the border of Tredyffrin Township. *Id.* at 36. In rebuttal, Appellee testified that the border was located six-tenths of a mile from the lot.

¶ 6 Following her arrest, Appellee filed a pretrial motion to suppress all evidence flowing from Officer Carsello's interdic-

tion. The suppression court granted that motion based solely on its conclusion that Appellee's seizure was invalid because Officer Carsello did not personally "observe the Defendant's faulty driving." Trial Court Opinion, 4/3/03, at 6. The court concluded specifically that "Officer Major had probable cause to believe that the driving had violated the Vehicle Code," but it granted Appellee's suppression motion because Officer Major's "knowledge was not transferred to Officer Carsello." *Id.* at 7. This appeal by the Commonwealth followed.

¶ 7 As noted, the trial court's decision to suppress the evidence in this case was premised on the fact that Officer Carsello had not personally observed the traffic violations in question. We are constrained to conclude that the suppression court's legal conclusion in this respect was erroneous. The record clearly indicates that Officer Carsello was relayed the information that another officer sought Appellee's investigation based on that officer's observations. While Officer Major's specific observations were not relayed over the police broadcast, once Officer Carsello arrived at the parking lot to investigate, Officer Major pointed to Appellee's vehicle as containing the suspect.

■ ¶ 8 It is entirely permissible for an officer to engage in the investigation of a suspect based on the observations of another officer even when the officer conducting the investigation has not been supplied with the specific facts needed to support the seizure; however, the officer who made the observations must have the necessary facts to support the ordered interdiction. *See United States v. Hensley,* 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985) (police may conduct investigatory stop in reliance on another police department's wanted flyer as long as flyer was issued based on articulable facts supporting reasonable suspicion); *Commonwealth v. Kenney,* 449 Pa. 562, 297 A.2d 794 (1972) (officer making warrantless arrest pursuant to order from superior need not have probable cause for arrest provided superior had information necessary to support probable cause to order arrest). This precept flows from the realities of police investigation, which often relies upon the cooperation of many police officers.

¶ 9 *Commonwealth v. Bolton,* 831 A.2d 734 (Pa.Super.2003) illustrates the propriety of the police investigation in the instant case. In *Bolton,* the defendant was being followed by a police officer, who did not observe any traffic violations but who did run the license plate number of the defendant's car through a National Crime Information Center ("NCIC") computer check. That check revealed that the car the defendant was operating did not have insurance. The officer stopped the vehicle and discovered through another NCIC check that the defendant did not have a driver's license.

¶ 10 We upheld the validity of the stop of the vehicle based on its violation of the Motor Vehicle Code's requirement of insurance for all registered vehicles. We noted that a report from the NCIC consistently has been held to support a probable cause determination that a crime was committed even though the officer who conducted the seizure did not have knowledge of the specific facts upon which the report was issued. *See also Commonwealth v. Cotton,* 740 A.2d 258 (Pa.Super.1999). Similarly, an officer is permitted to conduct a seizure based upon a police radio broadcast when directed to perform the seizure by an officer in possession of facts sufficient to justify the interdiction or under other circumstances not here relevant. *Commonwealth v. Sanchez,* 416 Pa.Super. 160, 610 A.2d 1020 (.1992).

¶ 11 In the present case, Officer Carsello received a broadcast to conduct an investigation of a car and was directed through the broadcast to the location of the car. Once at that location, Officer Major then gave Officer Carsello a hand signal, specifically directing him to investigate Appellee's car. Thus, in this case, Officer Carsello was conducting an investigatory detention of Appellee based upon the observations of Officer Major. We now must direct our attention to whether Officer Major's observations provided probable cause to support Appellee's seizure.[1] In so doing, we repeat that the suppression court specifically found that Officer Major did have probable cause to stop Appellee's car.

¶ 12 The Supreme Court's seminal pronouncements in *Commonwealth v. Gleason,* 567 Pa. 111, 785 A.2d 983 (2001), and *Commonwealth v. Whitmyer,* 542 Pa. 545, 668 A.2d 1113 (1995), provide the starting point for our analysis. Pursuant to *Gleason,* a traffic stop is justified if a police officer has probable cause to believe that a violation of the Motor Vehicle Code has occurred. *See* 75 Pa.C.S. § 6308(b). Under *Gleason* and *Whitmyer,* a police officer must articulate the specific facts he possessed at the time of the questioned stop that provide probable cause to believe that the vehicle or the driver was in violation of a specific provision of the Motor Vehicle Code.

¶ 13 In *Whitmyer,* when merging with other traffic, the motorist crossed briefly onto a solid white line in a manner that was neither careless nor reckless. While police opined that the motorist was speeding, the motorist had not been clocked for three-tenths of a mile, as required by the provision of the Motor Vehicle Code related to speeding, 75 Pa.C.S. § 3368(a). The Court concluded that police had failed to identify any Motor Vehicle Code provision that had been violated in order to justify the stop.

¶ 14 Similarly, in *Gleason,* the Supreme Court concluded that police lacked probable cause to stop a motorist when the only behavior observed was the motorist's crossing of a berm line on a deserted road on two or three occasions over the course of one-quarter of a mile in the very early morning hours. In that case, the Commonwealth argued the occurrence of a violation of 75 Pa.C.S. § 3309(1), driving on roadways laned for traffic, which provides in relevant part,

Whenever any roadway has been divided into two or more clearly marked lanes for traffic the following rules in addition to all others not inconsistent therewith shall apply: (1) DRIVING WITHIN SINGLE LANE.—A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from the lane until the driver has first ascertained that the movement can be made with safety.

¶ 15 The Supreme Court held that a violation of 75 Pa.C.S. § 3309(1) was not proven because there was no evidence that the driver created a safety hazard by momentarily crossing onto the berm of a des-

---

1. The Commonwealth asserts that Appellee was not seized in this case because she voluntarily brought her car to a stop prior to Officer Carsello's approach. We cannot agree. Officer Carsello was in uniform, exited a marked cruiser, and immediately demanded legal documents. His intent was not to aid a stranded motorist but to check for a driver who possibly was under the influence of alcohol. A reasonable motorist would not believe that he was free to decline the officer's request and remove himself from the parking lot. Thus, we conclude that a seizure occurred. *Commonwealth v. Freeman,* 563 Pa. 82, 757 A.2d 903 (2000) (seizure occurs when a reasonable person would not feel free to cease the interaction with police).

erted road. Due to the deserted nature of the road, the early morning time, and the momentary crossing of the fog line, the Court found that police lacked justification for the stop of the car.

¶ 16 The facts herein markedly differ from those examined in *Whitmyer* and *Gleason*. Appellee's actions demonstrated that she created a safety hazard to herself and others on the night in question. Appellee drove her car from the roadway and nearly struck a telephone pole that was on the shoulder. This action hardly is equivalent to a fleeting transgression of the berm line. Appellee created a risk of harm to herself by narrowly avoiding the pole. Moreover, Appellee created a risk of harm to others by traveling "across the double yellow line" and swerving "back over to the right side of the roadway" on more than one occasion. N.T. Suppression Hearing, 1/28/03, at 9. Appellee was followed for approximately five minutes over the course of several miles; Officer Major observed her continually cross over onto the berm and on at least two occasions cross into the oncoming lane of travel, creating a clear risk to oncoming traffic and creating probable cause to believe that she was driving under the influence of alcohol. Given the length of time and distance, public risk was created even though Officer Major could not recall specifically seeing other vehicles on the road. Certainly, Officer Major was a civilian at the time, and she was traveling on the roadway. Furthermore, since Appellee crossed over the double yellow line to the left and into oncoming traffic, she also violated 75 Pa.C.S. § 3301(a), which states that "a vehicle shall be driven upon the right half of the roadway," with exceptions not here applicable.

¶ 17 Indeed, we addressed a case with facts strikingly similar to those at issue herein in *Commonwealth v. Mickley*, 846 A.2d 686 (Pa.Super.2004). In *Mickley*, the motorist weaved within her lane of travel and then crossed over onto the berm three times. We concluded that the police officer had probable cause to stop the motorist and upheld the trial court's finding that the facts established that the defendant presented a clear hazard to herself and to others when she engaged in that driving behavior. *See also Commonwealth v. Klopp*, 863 A.2d 1211 (Pa.Super.2004) (police had probable cause to stop vehicle when motorist weaved four times over course of one and one-half miles and on each occasion crossed over double yellow or fog lines); *Commonwealth v. Lindblom*, 854 A.2d 604 (Pa.Super.2004) (stop upheld where motorist crossed double center and berm lines four or five times each); *Commonwealth v. Slonaker*, 795 A.2d 397 (Pa.Super.2002) (probable cause for traffic stop presented when police followed motorist for five miles and observed vehicle fully cross white fog line three times and weave onto double yellow center line); *cf. Commonwealth v. Battaglia*, 802 A.2d 652 (Pa.Super.2002) (erratic driving, standing alone, did not constitute violation of Motor Vehicle Code); *Commonwealth v. Garcia*, 859 A.2d 820 (Pa.Super.2004) (momentarily crossing white berm line twice insufficient to permit stop). Based on the foregoing, we concur with the suppression court's belief that Office Major had probable cause to initiate a stop of Appellee's car.

¶ 18 There is a secondary question that also must be addressed. Officer Carsello is a Tredyffrin Township Police Officer but admittedly approached Appellee's car while it was located in Willistown Township. The lot was between several hundred feet and six-tenths of a mile over the border. We agree with the Commonwealth's argument that Officer Carsello properly acted outside of his jurisdiction

under the Municipal Police Jurisdiction Act ("MPJA"), 42 Pa.C.S. § 8953(a)(2):

§ 8953. Statewide municipal police jurisdiction

(a) General rule.—Any duly employed municipal police officer who is within this Commonwealth, but beyond the territorial limits of his primary jurisdiction, shall have the power and authority to enforce the laws of this Commonwealth or otherwise perform the functions of that office as if enforcing those laws or performing those functions within the territorial limits of his primary jurisdiction in the following case

. . . .

(2) Where the officer is in hot pursuit of any person for any offense which was committed, or which he has probable cause to believe was committed, within his primary jurisdiction and for which offense the officer continues in fresh pursuit of the person after the commission of the offense.

¶ 19 In the present case, it was established that when Officer Carsello entered Willistown Township, he had been instructed to conduct an investigatory detention of Appellee by another officer who had observed suspicious driving while Appellee was located in Tredyffrin Township. N.T. Suppression Hearing, 1/28/03, at 26–28. Officer Major had observed Appellee almost strike a telephone pole and continually leave her lane of travel both crossing to the left into the oncoming lane of traffic or to the right onto the berm. When Officer Carsello entered the parking lot, Officer Major, who was an off-duty Tredyffrin Township police officer and who actually observed Appellee's driving, pointed at Appellee's car. Officer Carsello was in pursuit of Appellee when he had probable cause, as determined in the above analysis and based upon Officer Major's observa-

tions, to believe Appellee had committed an infraction of the Motor Vehicle Code in Officer Carsello's jurisdiction.

¶ 20 Recently, our Supreme Court has noted that MPJA must be construed liberally to achieve one of its purposes, which is to provide police with the authority to act outside their jurisdictions under the circumstances enumerated in that Act. *Commonwealth v. Lehman,* —— Pa. ——, 870 A.2d 818 (2005). In ruling that a police officer did not violate the Act, the Court considered the reasonableness of the officer's actions and the fact that he had "not engaged in an extrajurisdictional fishing expedition nor an attempt to expand his sphere of power." *Id.* at 821.

¶ 21 Herein, Officer Carsello was attempting to protect the public with a minimal incursion into the neighboring jurisdiction when the Motor Vehicle Code infractions were committed within his jurisdiction immediately before he left it. His actions were reasonable, he did not engage in a fishing expedition, and he was not attempting to expand his power. Thus, as provided by subsection (a)(2), there was no violation of the MPJA. *Commonwealth v. Laird,* 797 A.2d 995 (Pa.Super.2002); *Commonwealth v. McPeak,* 708 A.2d 1263 (Pa.Super.1998).

¶ 22 Furthermore, even if a violation of the MPJA had occurred, suppression is not an appropriate remedy in this case. In *Commonwealth v. O'Shea,* 523 Pa. 384, 399–401, 567 A.2d 1023, 1030 (1989) (footnote and citations omitted), our Supreme Court concluded that police had not violated the MPJA but noted that even if there had been a violation, it would not have warranted the remedy of suppression. It stated:

Additionally, we agree with the suppression court's alternative reason for denying suppression, *i.e.,* that even as-

suming, *arguendo*, that there had been a violation of [the MPJA], exclusion of evidence thereby obtained would not be required in this case. In *Commonwealth v. Mason*, 507 Pa. 396, 490 A.2d 421 (1985), we held that suppression of evidence was an inappropriate remedy for a violation of the Rules of Criminal Procedure relating to the issuance and execution of a search warrant outside of a police officer's primary jurisdiction where said violation did not implicate fundamental, constitutional concerns, was not conducted in bad faith or did not substantially prejudice the accused in the sense that the search would not otherwise have occurred or would not have been as intrusive. Automatic exclusion of evidence obtained by searches accompanied by relatively minor infractions of the rules of criminal procedure would be a remedy out of all proportion to the violation, or to the benefits gained to the end of obtaining justice while preserving individual liberties.

The Superior Court has recognized that, under *Mason*, suppression of evidence may or may not be the appropriate remedy for a violation of section 8953 of the Act, depending upon all of the circumstances of the case including the intrusiveness of the police conduct, the extent of deviation from the letter and spirit of the Act, and the prejudice to the accused. *Compare Commonwealth v. Saul*, 346 Pa.Super. 155, 499 A.2d 358 (1985); *Commonwealth v. Peppers*, 357 Pa.Super. 270, 515 A.2d 971 (1986); *Commonwealth v. Sestina*, 376 Pa.Super. 441, 546 A.2d 109 (1988): *with Commonwealth v. Merchant*, 385 Pa.Super. 264, 560 A.2d 795 (1989); *Commonwealth v. Fiume*, 292 Pa.Super. 54, 436 A.2d 1001 (1981); *Commonwealth v. Roberts*, 356 Pa.Super. 309, 514 A.2d 626 (1986). We approve of this case-by-case approach to the determination of the appropriateness of exclusion of evidence allegedly obtained in violation of the Act. Accordingly, we affirm the suppression court's alternative ruling that exclusion of the challenged evidence would not be warranted in this case even if the search was considered to be "illegal" under section 8953.

¶ 23 The purpose of the MPJA is to proscribe investigatory, extraterritorial forays used to acquire additional evidence where probable cause does not yet exist. *Laird, supra.*

The Statutory Construction Act of 1972 provides that the MPJA is not within the class of statutes to be strictly construed; rather, courts must construe the MPJA liberally to promote the interests of justice. 1 Pa.C.S. § 1928(b), (c); *Commonwealth v. Fetsick*, 392 Pa.Super. 264, 572 A.2d 793 (1990).

One of the principal purposes of the MPJA is to promote public safety while placing a general limitation on extraterritorial police patrols. *Commonwealth v. Merchant*, 528 Pa. 161, 595 A.2d 1135, 1138 (1991).

*Id.* at 998.

¶ 24 In the instant case, Officer Carsello did not enter Willistown Township in order to conduct an extraterritorial patrol or to obtain further facts to support a probable cause determination. He was directed to make the investigatory detention. Officer Carsello's actions did not constitute the type of behavior that the legislature sought to prohibit through the enactment of the MPJA, and therefore, suppression would not be an appropriate remedy in this case even had the MPJA been violated. *McPeak, supra.*

¶ 25 Order reversed. Case remanded. Jurisdiction relinquished.

¶ 26 Judge FORD ELLIOTT Concurs in the Result and Judge GANTMAN Notes Dissent.