OPINION BY MOULTON, J.: Donald Lester Smith appeals from the April 25, 2016 judgment of sentence entered in the Lycoming County Court of Common Pleas following his bench trial convictions for two counts of possession of a controlled substance, two counts of possession with intent- to deliver a controlled substance, possession of drug paraphernalia, criminal conspiracy, and criminal use of a communications facility.[1] We affirm. The trial court set forth the following factual history: On June 10, 2015, [Trooper William Holmes, a 24-year veteran of the Pennsylvania State Police (“PSP”) with extensive training and experience in narcotics,] ... was in the area of the Kmart Plaza [in Loyalsock Township, Lycoming County] assisting the [PSP] Narcotics Unit in gathering information with respect to alleged control substance trafficking on Tinsman Avenue, He was in a “covert surveillance post.” [Trooper Holmes] took numerous photos of an individual on Tinsman Avenue allegedly engaged in drug trafficking. He also observed the same individual allegedly involved in illegal drug transactions in the Kmart parking lot as well as another area in Loyalsock Township. [[Image here]] On June 16, 2016, [PSP] Trooper [Tyson] Havens and Trooper Robert Williamson were on duty and patrolling in an unmarked vehicle in Loyalsock Township. They were assigned to a[n] “aggressive patrol” traveling throughout specific areas of Loyalsock Township and Williamsport where “a lot of drug activity was being reported by civilians.” Approximately a week earlier, Trooper Havens was speaking with Trooper William Holmes regarding drug activity in Loyalsock Township in the area of the Kmart Plaza. Trooper Holmes provided Trooper Havens with at least one surveillance photo of a black male between 20 and 30 years old, who weighed approximately 220 pounds, had tattoos on his left arm and was wearing bright red shoes. Trooper Holmes related to Trooper Havens that he observed the black male conduct what appeared to be at least five different. drug transactions with unknown individuals in cars in the area. Trooper Holmes asked for Trooper Havens’ assistance in identifying the black male. At approximately 10:00 a.m. on June 16, 2015, while Troopers Havens and Williamson were stationary [sic] near the area of the Best Western Hotel in Loyalsock Township across the street from the Kmart Plaza, they observed a passenger in a vehicle that passed in front of them. Both Trooper Williamson and Trooper Havens concluded that the passenger “looked a lot like the guy in the surveillance photo” provided by Trooper Holmes. This particular area was known as a “narcotics area.” In fact, the troopers were stationed in close proximity to the area where Trooper Holmes. previously took the picture of the suspect. Trooper Havens and Trooper Williamson followed the vehicle around the hotel. The vehicle parked and the [T]roopers parked beside the vehicle. The passenger exited the vehicle. Trooper Havens immediately recognized the individual as the same individual in the surveillance photo “right down to the bright red shoes.” In fact, Trooper Holmes had nicknamed the unknown black male as “Dorothy” because of the shiny red shoes.' Trooper Havens concluded- as well that the suspect might have been wearing the same shorts as were depicted in the surveillance photo. The suspect exited the vehicle and quickly started walking away toward a breezeway. Trooper Havens exited his vehicle and called out for the suspect to stop. The [suspect] looked back, saw Trooper Havens who was in uniform, made eye contact with Trooper Havens[,] and walked away even faster. It was clear to Trooper Havens that the •suspect wanted to get away.' For a short period of time, perhaps a few seconds, Trooper Havens lost sight of the suspect in the breezeway area. As a result, Trooper Havens jogged after the suspect, observed him at the end of the breezeway and called for him to stop a second time. The suspect continued walking away at a fast pace. Trooper Havens jogged faster and caught up with the suspect. Trooper Havens grabbed the suspect’s arm. Immediately, the suspect tensed. Trooper Havens, based on his personal experience in the field for over two decades concluded that “a.fight was coming.” For “officer safety,” Trooper Havens placed the suspect in handcuffs. The suspect was wearing a-t-shirt and shorts. Trooper Havens was not concerned with [Smith] having any weapons; he just did not want to get in a fight and be “rolling around on the floor.” Trooper Havens advised [Smith] that he was not under arrest,, just being detained. The suspect was escorted/walked back to the PSP vehicle. The walk back was approximately 30 to 40 feet. The suspect was identified as [Smith]. In approximately a minute, after first being handcuffed, Trooper Havens released [Smith] from handcuffs. In a ruse, Trooper Havens falsely, informed [Smith] that the PSP were dispatched to the hotel for a report of two black males breaking into a hotel room. [Smith] advised Trooper Havens that he was staying at a hotel room, in fact Room 123, but he had not broken into any rooms. The [T]roopers were contemporaneously advised via, .dispatch that the driver of the vehicle ... was .wanted out of Philadelphia. [The driver], was taken into custody. While [the driver] was being handcuffed, Trooper Havens asked [Smith] if he had any weapons on him. [Spiith] advised no, but indicated that he had “a little personal use heroin in his pocket.” [Smith] directed Trooper Havens to his front right cargo shorts pocket where Trooper Havens discovered- 22 bags of suspected heroin in bundled amounts., Trooper Havens also discovered in [Smith]’s left front pants pocket a cigar wrapper with four bags of suspected heroin. As well, Trooper Havens located on [Smith] $536,00 and two cellular phones. Trial Ct. Op., 12/11/15, at 2-6. Based on the evidence and statements obtained from Smith, the troopers secured a search warrant for Smith’s hotel room and recovered an additional 136 bags of heroin, $300 in cash, digital scales, and a quantity of marijuana. N.T., 12/7/15, at 23. On August 25,2015, Smith filed a motion •to suppress physical evidence arid statements, alleging that Trooper Havens stopped him without the requisite reasonable suspicion. After a hearing on December 7, 2015, the trial court denied Smith’s motion on December 11; 2015. On April 25, 2016, following a non-jury trial, the trial court found Smith guilty of the aforementioned offenses-’and sentenced him to an aggregate term of 4 to 10 years’ iricarcération. On May'12, 2016, Smith timely filed a notice of appeal. Smith raises three issues .on appeal: . • ■ I. Did the lower court err when it denied [Smith]’s motion to suppress the evidence when an officer violated ... Smith’s right against unreasonable search and seizure under both Article I, Section 8 of the Pennsylvania Constitution and 4th Amendment of the United States- Constitution when he chased down and handcuffed Mr. Smith without the requi- ' site reasonable suspicion or probable cause? II." Did the lower court err when it denied [Smith]’s motion to suppress [Smith]’s statements made after he was subjected to an unlawful detention? III. Did the lower court err when it denied [Smith]’s motion to suppress the evidence obtained via a search warrant, since without the illegally - obtained controlled substance and statements from ,.. Smith, the search warrant for the hotel room lacked probable cause and was unconstitutionally defective? Smith’s Br. at 12 (trial court answers omitted). In reviewing the denial of a suppression motion, we must determine ■ whether the suppression court’s factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may considér only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court’s factual findings are supported by the record, we are bound by these findings and may reverse only if the court’s legal conclusions are erroneous. Where, as here, the appeal of the determination of the suppression court turns on allegations of legal err,or, the suppression court’s legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions pf law of the courts below are subject to our plenary review. Commonwealth v. Jones, 605 Pa. 188, 988 A.2d 649, 654 (2010) (internal quotations and citations omitted). First, Smith argues that the trial court should have suppressed the physical evidence recovered and the statements he made to Trooper Havens because Trooper Havens seized Smith without reasonable suspicion. According to Smith, he was “illegally arrested” when Trooper Havens caught him, which-required Trooper Havens to. possess reasonable suspicion. Smith asserts that Trooper Havens lacked reasonable suspicion because Trooper Havens only saw Smith “riding in the passenger [seat] of a gray vehicle” and did not observe Smith engage in hand-to-hand drug sales or observe any contraband or controlled- substances prior to the seizure. Smith’s Br. at 19-20. Smith contends that Trooper Havens only knew that Smith “may have been the same individual wearing red shoes as photographed by ... [T]rooper [Holmes]” and that the allegations of narcotics activity five days earlier “were insufficient to support a reasonable suspicion that [Smith] was currently involved in narcotic' transactions on that day.” Id. at 20. The investigation of possible criminal activity invariably brings police officers in contact with members of the public. Depending on the circumstances, a police-citizen encounter may implicate the liberty and privacy interests of the citizen as em: bodied in both the federal constitution, see U.S. Const, art. IV,[2] and our state constitution, see Pa. Const. art. I, § 8.[3] The law recognizes three distinct levels of interaction between police officers and citizens: (1) a mere encounter; (2) an investigative detention; often described as a Terry stop, see Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); and (3) a custodial detention. See Commonwealth v. Jones, 874 A.2d 108, 116 (Pa.Super. 2005). “A mere encounter can be any formal or informal interaction between an officer and a citizen, but will normally be an inquiry by the officer of a citizen. The hallmark of this interaction is that it carries no official compulsion to stop or respond,” Commonwealth v. DeHart, 745 A.2d 633, 636 (Pa.Super. 2000) (citation and quotation omitted), and therefore need not be justified by any level of police suspicion, Commonwealth v. Polo, 563 Pa. 218, 759 A.2d 372, 375 (2000). An investigative detention “constitutes a seizure of a person and activates the protections of the Fourth Amendment.” Commonwealth v. Baldwin, 147 A.3d 1200, 1203 (Pa.Super. 2016). To determine whether and when a seizure has occurred, we employ “an objective test entailing a determination of whether, in view of all surrounding circumstances, a reasonable person would have believed that he was free to leave.” Commonwealth v. Strickler, 563 Pa. 47, 757 A.2d 884, 889 (2000). In evaluating the circumstances, the focus is directed toward whether, by means of physical force or show of authority, the citizen-subject’s movement has in some way been restrained. In making this determination, courts must apply the totality-of-the-circumstances approach, with no single factor dictating the ultimate conclusion as to whether a seizure has occurred. Id. at 890 (internal citation and footnotes omitted). A custodial detention is the functional equivalent of an arrest and “must be supported by probable cause.” Commonwealth v. Caban, 60 A.3d 120, 127 (Pa.Super. 2012). In determining whether a detention is investigative or custodial, we consider the basis for the detention (the crime suspected and the grounds for suspicion); the duration of the detention, the location of the detention (public or private); whether the suspect was transported against his will (how far, why); the method of detention; the show, threat or use of force; and, the investigative methods used to confirm or dispel suspicions. In the Interest of S.J., 551 Pa. 637, 713 A.2d 45, 47 (1998) (quoting Commonwealth v. Gommer, 445 Pa.Super. 571, 665 A.2d 1269, 1274 (1995)). The handcuffing of a suspect, by itself, does not convert an investigative detention into an arrest. Commonwealth v. Rosas, 875 A.2d 341, 348 (Pa.Super. 2005). However, a police officer’s statement to a suspect that he or she is “not under arrest is not conclusive on whether an arrest was actually effectuated.” Id. The trial court concluded that Trooper Havens’ seizure of Smith was an investigative detention: The basis for the detention of [Smith] was officer safety. The duration of the detention was approximately one minute. The detention occurred in a public area outside of a hotel where [Smith] might have been free to flee in any different direction. [Smith] was transported against his will, but only approximately 30 to 40 feet before he was un-handcuffed. The purpose of the transport was to bring [Smith] back to the vehicle for the purpose of determining his identity and further investigating whether [Smith] and the driver of the vehicle were involved in illegal drug transactions. While Trooper Havens obviously handcuffed [Smith], he did not show, threaten, or use any other force. The method utilized in the investigation was limited to Trooper Havens: confirming or dispelling his suspicions. Trial Ct. Op., 12/11/15, at 8. We agree with the trial court’s analysis. The record establishes that Trooper Havens attempted to stop Smith to identify him from the surveillance photo and other information provided by Trooper Holmes. Having just chased after Smith, Trooper Havens handcuffed Smith to move him 30 or 40 feet back toward the car and removed the handcuffs once they returned to the car. Trooper Havens also told Smith he was not under arrest and confirmed that Smith was the individual that Trooper Holmes had observed making hand-to-hand drug transactions. Under these circumstances, we conclude that the trial court correctly identified this stop as an investigative detention. Having identified the nature of the encounter, we must now determine whether Trooper Havens had reasonable suspicion to detain Smith. An officer may stop and briefly detain a person for investigatory purposes when that officer has “reasonable suspicion, based on specific and articulable facts, that criminal activity may be afoot.” Commonwealth v. Allen, 555 Pa. 522, 725 A.2d 737, 740 (1999). “[T]he fundamental inquiry is an objective one, namely, whether the facts available to the officer at the moment of the intrusion warrant a. man of reasonable caution in the belief that the action taken was appropriate.” Commonwealth v. Gray, 784 A.2d 137, 142 (Pa.Super. 2001). We must consider the totality of the circumstances, including such factors as “tips, the reliability of the informants, time, location, and suspicious activity, including flight.” Id. (citing Commonwealth v. Freeman, 563 Pa. 82, 757 A.2d 903, 908(2000)). Smith argues that because Trooper Havens did not see the hand-to-hand drug transactions that allegedly occurred five days before the detention, Trooper Havens lacked reasonable suspicion to detain him. We disagree. It is entirely permissible for an officer to engage in the investigation of a suspect based on' the observations of another officer even when the officer conducting the investigation has not been supplied with the specific facts needed to .support the seizure; however, the officer who made the observations must have the necessary facts to support the interdiction. This precept flows from the realities of police investigation, which often relies upon the cooperation of many police officers. Commonwealth v. Chernosky, 874 A.2d 123, 126 (Pa.Super. 2005) (internal citations omitted). In Chemosky, an off-duty officer observed the appellant failing to maintain a normal speed, swerve off the róad and nearly strike a telephone pole, and fail to maintain her lane once she got back onto the road. Id. at 125. That officer called 911 and requested that another officer intercept the car. Id. An on-duty officer heard that call over dispatch, located the car, and stopped it. Id. The on-duty officer then made contact with the driver, who, after failing a series of field sobriety tests, was arrested for driving under the influence. Id. The driver moved to “suppress all evidence flowing from [the on-duty officer’s interdiction,” arguing that the “seizure was invalid because [the on-duty officer] did not personally observe the [appellant’s driving.” Id. at 125-26 (quotation omitted). The trial court suppressed the evidence flowing from the stop, concluding that while the off-duty officer had probable cause to believe that the appellant had violated the Vehicle Code, the off-duty officer’s knowledge “was not transferred” to the on-duty officer who stopped the appellant. Id. On appeal, we reversed, noting that officers are routinely permitted to seize suspects based on facts they did not personally observe, such as information in National Crime Information Center computer checks and “police radio broadcasts when directed to perform the seizure by an officer in possession of facts sufficient to justify the interdiction.” Id. (citing Commonwealth v. Bolton, 831 A.2d 734 (Pa.Super. 2003); Commonwealth v. Sanchez, 416 Pa.Super, 160, 610 A.2d 1020 (1992)). Here, Trooper Holmes provided Trooper Havens with at least one surveillance photo of a person whom Trooper Holmes saw engaging in hand-to-hand narcotics sales. Under Chernosky and its related cases, Trooper Havens was permitted to use this, information to determine whether he had reasonable- suspicion to detain Smith. Not only did Smith match the description and the photo given to Trooper Havens, but Smith, was detained in close proximity to the location where the suspect had been observed making hand-to-hand drug transactions, which was an area known for a high volume of narcotics sales. Further, after Trooper Havens asked Smith to “stop,” Smith attempted to flee by walking at a faster pace than when Smith exited the car.[4] Under these circumstances, we conclude that Trooper Holmes had reasonable suspicion to detain Smith.[5] Next, Smith argues that the trial court erred in denying .his motion to suppress statements he made “after he was subjected to an unlawful detention,” Smith’s Br. at 21. Because ,we have determined that Trooper Havens lawfully detained Smith and Smith’s argument is based on. an .'allegedly unlawful detention, this claim fails.[6] . Finally, Smith argues that the^ trial court erred in denying his motion to suppress the evidence obtained by search warrant. According to Smith, because Trooper Havens illegally obtained the controlled substances from Smith and Smith’s, .statements should have been suppressed, the search warrant was defective because Trooper Havens lacked probable cause. We disagree. As discussed above, Trooper Havens lawfully detained ’Smith, who then voluntarily told Trooper Havens that he was carrying controlled substances. Because the statements and physical evidence were lawfully obtained, the Troopers were permitted to incorporate them into the affidavit, which provided probable cause to-search the hotel room. Judgment of sentence affirmed. . 35 P.S. §§ 780-113(a)(16), (30), and (32), and 18 Pa.C.S. §§ 903(a) and 7512(a), respectively. . The Fourth Amendment to the-United States Constitution provides: The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized. U.S. Const. amend. IV. . Our Supreme Court has held that “the Fourth Amendment [of the United States Constitution] and Article I, [Section] 8 [of the •Pennsylvania Constitution] are coterminous for Terry [v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)] purposes." Commonwealth v. Chase, 599 Pa. 80, 960 A.2d 108, 118 (2008). Article I, Section 8 of the Pennsylvania Constitution provides: The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by-the affiant-. Pa. Const. art. I, § 8. .In its opinion, the trial court concluded that ■ Smith attempted to flee twice, as Trooper Havens called out for Smith to stop twice— once after Smith exited the car and started walking away and,a second time when Smith quickened his pace after Trooper Havens said "stop.” The record shows that Trooper Ha-wens jogged. after Smith following his first request for Smith to stop. Because a mere instruction to “stop” does not place a suspect under investigative detention, see Commonwealth v. Brown, 904 A.2d 925, 930 (Pa.Super. 2006), but chasing a suspect constitutes a seizure, see Commonwealth v. Matos, 543 Pa. 449, 672 A.2d 769, 776 (1996), we conclude that Smith was seized when Trooper Havens began to jog after him. Therefore, Smith’s second "flight,” found by the trial court after Trooper Havens told Smith to stop for the second time, does not factor into our analysis, ás information developed after a police-citizen encounter moves from consensual to coercive cannot be used to justify the detention,' See Florida v. J.L., 529 U.S. 266, 271, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000) (“[T]he reasonableness of official suspicion must be measured by what the officers lmewRefore they conducted their search.”). In its reasonable-suspicion analysis, the trial court also considered Smith's reaction to being caught, which Trooper Havens described as tensing up and acting nervous. As with Smith’s second "flight,” this fact is not relevant to the reasonable-suspicion analysis because it occurred after Smith had been seized. .; . In addition, we note that in his brief Smith conflates the applicable standards for determining both the nature of the encounter and the required, level of suspicion. While Smith argues that he was "illegally arrested,” which implies that the Trooper Havens required, and lacked, probable cause to arrest him for a crime, he also asserts that he was detained for investigative purposes and that Trooper Havens lacked reasonable suspicion. Because we have determined that Trooper Havens de- ■ tained Smith for investigative purposes and had the requisite reasonable suspicion to do .so, Smith’s argument fails. . In this portion of his brief, Smith also notes that he was not read his rights pursuant to Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) before malting the statements in question. However, “[i]t is well-established that the dictates of Miranda do not attach during an investigatory detention,” Commonwealth v. Murray, 936 A.2d 76, 81 (Pa.Super. 2007) (quotation omitted),