J-S40027-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| CARLOS VALLES | : | |
| | : | |
| Appellant | : | No. 326 EDA 2017 |

Appeal from the Judgment of Sentence November 4, 2016
in the Court of Common Pleas of Philadelphia County
Criminal Division at No.:  CP-51-CR-0002605-2016

BEFORE:   LAZARUS, J., DUBOW, J., and PLATT*, J.

MEMORANDUM BY PLATT, J.:                           **FILED AUGUST 24, 2018**

Appellant, Carlos Valles, appeals from the judgment of sentence imposed following his bench conviction of possession of a controlled substance and possession with intent to deliver (PWID).[1]  We affirm.

We take the following pertinent facts and procedural history from our independent review of the certified record.  On February 3, 2016, at approximately 9:35 p.m., Philadelphia Police Officers Nicholas Carrelli and Larry Grawe were patrolling in a marked police vehicle in the area of 343 East Albanus Street in Philadelphia, a known drug area, based on complaints of drug sales and burglary.  (**See** N.T. Suppression Hearing, 6/01/16, at 8-12, 41).  They entered an alleyway shared by residents of East Sheldon and East

---

[1] 35 P.S. § 780-113(a)(16), (30), respectively.

---

\*   Retired Senior Judge assigned to the Superior Court.

Allegheny Streets, which contained a lane of travel for each side of the block. (*See id.* at 12). They observed an idling black Nissan sedan in the alley. (*See id.* at 12-13). An individual was leaning into the passenger side window and conversing with Appellant, who was in the driver's seat. (*See id.* at 12, 15, 41-42). The Nissan was obstructing the roadway, a violation of the Vehicle Code.[2] (*See id.* at 15, 41). Because he could not get through due to the obstruction, and had observed the two individuals, Officer Carrelli ran the license plate, which came back to a 1998 Ford vehicle, not to a Nissan, also a violation of the Vehicle Code.[3] (*See id.* at 15-16, 19).

The officers exited their vehicle. Officer Carrelli approached Appellant and Officer Grawe approached the other individual that was leaning into the Nissan. (*See id.* at 21). When asked for identification and paperwork for the vehicle, Appellant stated that he did not have any. Moments later, Officer

---

[2] Section 3351 of the Pennsylvania Vehicle Code provides, in pertinent part:

Outside a [] residence district, no person shall stop, park or stand any vehicle, whether attended or unattended, upon the roadway when it is practicable to stop, park or stand the vehicle off the roadway. In the event it is necessary to stop, park or stand the vehicle on the roadway or any part of the roadway, an unobstructed width of the highway opposite the vehicle shall be left for the free passage of other vehicles[.] . . .

75 Pa.C.S.A. § 3351(a).

[3] Section 1372 of the Pennsylvania Vehicle Code provides, in pertinent part that "[n]o person shall . . . display a registration card or plate in, on or in connection with any vehicle other than the vehicle for which it was issued." 75 Pa.C.S.A. § 1372(3).

- 2 -

Carrelli observed a silver object that appeared to be the barrel of a firearm under the driver's seat. (*See id.* at 21, 28).

To control the scene, Officer Carrelli immediately instructed Officer Grawe to handcuff the other individual and put him in the patrol car. (*See id.* at 22). When he returned to the Nissan to help Officer Carrelli with detaining Appellant, Officer Grawe also observed what appeared to be the barrel of a handgun under the driver's seat. (*See id.* at 43, 45). For their safety, the officers removed Appellant from the car to separate him from the firearm. (*See id.* at 22-23, 43). Officer Grawe immediately performed an "open hand pat down" of Appellant to ensure that he did not have any other weapons. (*See id.* at 44). He "felt a [four or five inch] block-shaped object in [Appellant's] right front breast pocket . . . [that] felt like it could be the magazine to the firearm[.]" (*Id.*). The officer asked Appellant what was in his pocket, and he admitted it was narcotics. (*See id.*). Officer Grawe then removed the item, which consisted of a block of sixty-six baggies of heroin wrapped in newspaper, from his right breast pocket. (*See id.* at 44, 46). After recovering the heroin, the officers arrested Appellant. They then retrieved a BB gun from under the driver's seat of the vehicle. (*See id.* at 23-25).

On March 22, 2016, the Commonwealth filed an information against Appellant charging him with PWID, possession of a controlled substance, and possession of an instrument of crime (PIC). Appellant filed a motion to

- 3 -

suppress that the trial court denied on June 3, 2016, after a hearing. On August 8, 2016, the court conducted a waiver trial. At the proceeding's conclusion, it held the matter under advisement and convicted Appellant of PWID and possession of a controlled substance on August 10, 2016.[4]

On November 4, 2016, the court sentenced Appellant to a term of incarceration of not less than two nor more than four years, plus three years' reporting probation. The possession charge merged for sentencing purposes.[5] The trial court denied Appellant's timely post-sentence motion for reconsideration of sentence on December 20, 2016. Appellant timely appealed.[6]

Appellant raises two questions for this Court's review:

1. [Whether] the [trial] court err[ed] by denying suppression of [Appellant's] statement and drugs which were seized from [his] person and from his vehicle where [Appellant] was under arrest in the absence of probable cause after he was removed from his car and handcuffed?

2. [Whether] the [trial] court err[ed] by denying the suppression of [Appellant's] statement that the item in his pocket

_____

[4] The court granted Appellant's unopposed motion for judgment of acquittal on the PIC charge.

[5] The sentence also included a violation of probation sentence of not less than one nor more than three years' incarceration, to run concurrently, for a previous escape conviction. (**See** N.T. Sentencing, 11/04/16, at 13, 15).

[6] Appellant filed a timely court-ordered statement of errors complained of on appeal on May 10, 2017. The court filed an opinion on August 29, 2017. **See** Pa.R.A.P. 1925.

consisted of drugs as that statement was obtained in the absence of **Miranda**[7] warnings and in response to questioning by the police while [he] was in the custody of the police?

(Appellant's Brief, at 3).

Appellant's issues challenge the court's denial of his motion to suppress.

Our standard of review on appeal of the denial of a motion to suppress is to determine whether the certified record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings. We consider only the evidence of the prosecution's witnesses and so much of the defense as, fairly read in the context of the record as a whole, remains uncontradicted. If the record supports the factual findings of the suppression court, we reverse only if there is an error in the legal conclusions drawn from those factual findings.

**Commonwealth v. Gould**, 2018 WL 2126856, at *4 (Pa. Super. filed May 9, 2018) (citations and quotation marks omitted).

In his first issue, Appellant argues that, because he "was under arrest in the absence of probable cause at the moment he was extracted from his car, handcuffed and frisked[,] . . . the narcotics [and Appellant's] statement [were] fruit of the poisonous tree and should have been suppressed." (Appellant's Brief, at 17). We disagree.

"The law recognizes three distinct levels of interaction between police officers and citizens: (1) a mere encounter; (2) an investigative detention; often described as a **Terry** stop, **see Terry v. Ohio**, 392 U.S. 1 (1968); and (3) a custodial detention." **Commonwealth v. Smith**, 172 A.3d 26, 31-32

---

[7] **Miranda v. Arizona**, 384 U.S. 436 (1966).

(Pa. Super. 2017) (one citation omitted; citation formatting provided).

Additionally:

> In determining whether a detention is investigative or custodial, we consider
>
> > the basis for the detention (the crime suspected and the grounds for suspicion); the duration of the detention, the location of the detention (public or private); whether the suspect was transported against his will (how far, why); the method of detention; the show, threat or use of force; and, the investigative methods used to confirm or dispel suspicions.
>
> The handcuffing of a suspect, by itself, does not convert an investigative detention into an arrest. . . .

*Id.* at 32 (citations omitted).

Further:

> . . . Pennsylvania law makes clear that a police officer has probable cause to stop a motor vehicle if the officer observes a traffic code violation, even if it is a minor offense.
>
> > \* \* \*
>
> > During a traffic stop, the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions. [I]f there is a legitimate stop for a traffic violation . . . additional suspicion may arise before the initial stop's purpose has been fulfilled; then, detention may be permissible to investigate the new suspicions.
>
> Moreover, it is well-established that when an officer detains a vehicle for violation of a traffic law, it is inherently reasonable that he or she be concerned with safety and, as a result, may order the occupants of the vehicle to alight from the car.
>
> Furthermore, for their safety, police officers may handcuff individuals during an investigative detention.

*Commonwealth v. Harris*, 176 A.3d 1009, 1019-21 (Pa. Super. 2017) (citations, footnote, and quotation marks omitted).

Here, the trial court found that Appellant was subject to an investigatory detention. (*See* Trial Court Opinion, 8/29/17, at 4-6). We agree. The record confirms that the officers properly initiated the stop on a public roadway because they had probable cause to believe that Appellant was violating the Vehicle Code by blocking the flow of traffic. Upon further investigation, before approaching Appellant, they discovered that he was driving a vehicle with another car's license plate, thus giving them probable cause to support a second violation. Upon approaching Appellant to investigate, Officer Carrelli observed the barrel of a gun under Appellant's seat. For their safety, the officers removed Appellant from the vehicle, handcuffed him, and performed a pat-down search. The officers did not transport him anywhere for questioning or threaten the use of force.

Based on the foregoing we conclude that the trial court properly found that Appellant was subject to an investigative detention, not an arrest or custodial interrogation. *See Harris*, *supra* at 1019-21; *Smith*, *supra* at 31-32. Appellant's first issue does not merit relief.

In his second claim, Appellant contends that the trial court erred in denying his motion to suppress his statement that he had drugs in his pocket because the officers did not provide him with *Miranda* warnings. (*See* Appellant's Brief, at 18-20). This issue lacks merit.

- 7 -

"It is well-established that the dictates of *Miranda* do not attach during an investigatory detention." *Commonwealth v. Murray*, 936 A.2d 76, 81 (Pa. Super. 2007) (citation and internal quotation marks omitted); *see also Commonwealth v. Witmayer*, 144 A.3d 939, 948 (Pa. Super. 2016), *appeal denied*, 169 A.3d 27 (Pa. 2017) ("Our law is well settled that an individual is entitled to *Miranda* warnings only when he is subject to a custodial interrogation.") (citation omitted).

Here, Appellant was subject to an investigatory, not a custodial, detention, and therefore he was not entitled to *Miranda* warnings. *See Witmayer*, *supra* at 948; *Murray*, *supra* at 81. Therefore, Appellant's second issue fails. The record supports the trial court's denial of his motion to suppress. *See Gould*, *supra* at *4.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/24/18