J-S25005-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: E.A., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: E.A., MINOR | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1755 EDA 2022 |

Appeal from the Order Entered June 15, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-JV-000654-2021

BEFORE:  NICHOLS, J., MURRAY, J., and McCAFFERY, J.

MEMORANDUM BY NICHOLS, J.:             **FILED NOVEMBER 13, 2023**

Appellant E.A., a minor, appeals from the order following his adjudication of delinquency for possession of a controlled substance.  On appeal, Appellant claims that the suppression court erred in denying his motion to suppress.  After careful review, we affirm.

The suppression court summarized the underlying facts of this matter as follows:

> On June 2, 2021 at approximately 7:08 [P.M.], [Philadelphia] Police Officer Gerard Gaydosh was on foot patrol at Lippincott and F Streets, which is in the 24th Police District in Philadelphia.  At the suppression hearing on February 18, 2022, Officer Gaydosh testified as to his experience as a police officer.  He has been a police officer since March of 2020.  He worked in the 24th District for fifteen months prior to February of 2022.  During those fifteen months, he worked five days a week plus overtime.  In his time on the police force he has observed more than ten hand-to-hand drug transactions per day.  He made forty stops resulting in drug arrests.  Of the forty stops, fifteen to twenty were within a three-block radius of Lippincott and F Streets.  At the Police Academy

he was trained in narcotics distribution and exchanges in Philadelphia.

While Officer Gaydosh was on F Street approaching Lippincott, he heard a female say "walkers, walkers." Officer Gaydosh was familiar with the term "walkers" because in his experience, it is used to "warn drug dealers that the cops are coming." Upon hearing the female say walkers, Officer Gaydosh's attention was drawn to his right where he observed [Appellant] handing small objects to an unidentified male. [Appellant] handed [the unidentified male] the objects with an open hand and closed palm. The unidentified male then handed [Appellant] an unknown amount of United States currency. Officer Gaydosh, based on his experience, believed he had just witnessed a drug transaction. After the transaction, both [Appellant and the unidentified male] began to flee, first toward Officer Gaydosh who was in full uniform. Upon seeing him, [Appellant] then turned and fled in the opposite direction. Officer Gaydosh pursued him. He gave [Appellant] a verbal command to stop. Officer Gaydosh eventually was close enough to grab [Appellant,] who went to the ground. As [Appellant] went to the ground, "items consistent with crack cocaine and powder cocaine packaging fell out of his front hood pocket." Officer Gaydosh then placed [Appellant] under arrest. Thirty-two clear Ziplock packets contained a fine white powdery substance, alleged powder cocaine; ten pink flip-top containers containing a white chunky substance, alleged crack cocaine; five clear Ziplock packets with blue glassine inserts stamped bitcoin containing a white powder substance, alleged heroin/fentanyl and eighty-five dollars in United States currency were recovered from the person of [Appellant] and highway.

Suppression Ct. Op., 10/20/22, at 2-3 (citations omitted and some formatting altered).[1]

The Commonwealth filed a delinquency petition alleging possession of a controlled substance and possession of a controlled substance with intent to

---

[1] Hon. Jonathan Q. Irvine presided over the suppression hearing and authored the suppression court's Rule 1925(a) opinion.

deliver (PWID).[2]  On September 14, 2021, Appellant filed a motion to suppress physical evidence and statements made to the police on the basis that Appellant's arrest was not based on probable cause.  Following a hearing, the suppression court denied Appellant's motion.

On June 15, 2022, the trial court held an adjudication hearing.  At the conclusion of the hearing, the trial court adjudicated Appellant delinquent as to the possession charge, but acquitted Appellant for PWID.

On July 13, 2022, Appellant timely filed a notice of appeal.  Appellant subsequently filed a court-ordered concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).  The trial court issued a Rule 1925(a) opinion addressing Appellant's claim.

Appellant raises the following issue for our review:

> Was not Appellant arrested without probable cause where a police officer observed Appellant engage in an innocuous exchange of money for unknown items on a street in broad daylight, and then immediately charged at and chased Appellant and pulled him to the ground?

Appellant's Brief at 3.

Appellant argues that Officer Gaydosh's interaction with Appellant constituted an arrest, which was not supported by probable cause.  Appellant's Brief at 9-19.  Specifically, Appellant argues that because Officer Gaydosh ran upon observing Appellant, rather than initially approaching him at a walking

---

[2] 35 P.S. § 780-113(a)(16) and (30), respectively.

pace, Officer Gaydosh's interaction with Appellant was no longer an investigative detention and instead constituted an arrest. *Id.* at 11.

The Commonwealth responds that Officer Gaydosh's interaction with Appellant initially began as an investigative detention. Commonwealth's Brief at 9. The Commonwealth further argues that Officer Gaydosh placed Appellant under arrest after observing several packets of white powder fall out of Appellant's sweatshirt pocket. *Id.* at 11.

> In reviewing the denial of a motion to suppress, our standard of review,
>
> is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We are bound by the suppression court's factual findings so long as they are supported by the record; our standard of review on questions of law is *de novo*. Where, . . . the defendant is appealing the ruling of the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted. Our scope of review of suppression rulings includes only the suppression hearing record and excludes evidence elicited at trial.

*Commonwealth v. Lear*, 290 A.3d 709, 715 (Pa. Super. 2023) (citations omitted), *appeal granted on other grounds*, --- A.3d ---, 2023 WL 6416182 (Pa. filed Oct. 3, 2023).

It is well settled that that "Article I, Section 8 of the Pennsylvania Constitution and the Fourth Amendment to the United States Constitution both protect the people from unreasonable searches and seizures. Jurisprudence arising under both charters has led to the development of three categories of

interactions between citizens and police." ***Commonwealth v. Lyles***, 97 A.3d 298, 302 (Pa. 2014) (citations omitted).

> The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

***Commonwealth v. Pakacki***, 901 A.2d 983, 987 (Pa. 2006) (citations omitted).

> [T]o establish grounds for reasonable suspicion, the officer must articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity. The question of whether reasonable suspicion existed at the time [the officer conducted the stop] must be answered by examining the totality of the circumstances to determine whether the officer who initiated the stop had a particularized and objective basis for suspecting the individual stopped. Therefore, the fundamental inquiry of a reviewing court must be an objective one, namely, whether the facts available to the officer at the moment of the [stop] warrant a man of reasonable caution in the belief that the action taken was appropriate.

***Commonwealth v. Basinger***, 982 A.2d 121, 125 (Pa. Super. 2009) (citations omitted and some formatting altered).

We find this Court's decision in ***Commonwealth v. Smith***, 172 A.3d 26 (Pa. Super. 2017), to be instructive. In ***Smith***, a Pennsylvania State Police trooper was engaged in covert surveillance with the State Police Narcotics

Unit. ***Smith***, 172 A.3d at 28. Specifically, the trooper, who had twenty-four years' experience with the Pennsylvania State Police with extensive training and experience in narcotics, was conducting an "aggressive patrol" of an area where "a lot of drug activity was being reported by civilians." ***Id.*** at 28-29 (citation omitted). Prior to going on patrol, the trooper was provided with a surveillance photograph of an individual suspected to have participated in at least five different drug transactions in the area of the patrol. ***Id.*** at 29.

During his patrol, the trooper observed the individual from the photograph exit his vehicle start quickly walking away. ***Id.*** The trooper, who was dressed in uniform, made eye contact with the individual, and the individual began walking away faster. ***Id.*** The trooper began jogging after the individual, and called for the individual to stop multiple times. ***Id.***

The ***Smith*** Court determined that the trooper had reasonable suspicion to conduct an investigatory detention, explaining:

> [The trooper was provided] with at least one surveillance photo of a person [who was observed] engaging in hand-to-hand narcotics sales. [The trooper] was permitted to use this information to determine whether he had reasonable suspicion to detain [the individual]. Not only did [the individual] match the description and the photo [provided], but [the individual] was detained in close proximity to the location where the suspect had been observed making hand-to-hand drug transactions, which was an area known for a high volume of narcotics sales. Further, after [the trooper] asked [the individual] to stop, [the individual] attempted to flee by walking at a faster pace than when [he] exited the car. Under these circumstances, we conclude that [the trooper] had reasonable suspicion to detain [the individual].

***Id.*** at 34 (citations and footnotes omitted and some formatting altered).

- 6 -

Here, the suppression court did not make a determination as to whether Appellant was first subjected to an investigative detention or a custodial detention. However, the suppression court concluded that Officer Gaydosh's interaction with Appellant was supported by probable cause. Specifically, the court explained:

> [T]he evidence at the suppression hearing established that sufficient relevant factors existed to determine probable cause. Initially, Officer Gaydosh was alerted to the exchange by a woman shouting "walkers." He testified that he relied on his experience in the district where he served for fifteen months to know that "walkers" was a warning to participants in a drug transaction that the police were approaching. The moment he heard "walkers," Officer Gaydosh immediately turned and observed [Appellant] in what he knew to be a drug transaction. The 24th Police District where Officer Gaydosh served, clearly, had a very high incidence of drug transactions. Officer Gaydosh was personally familiar with hand-to-hand drug transactions. Forty to fifty percent of the arrests made by Officer Gaydosh for drug transactions occurred within a three-block radius of the incident in the current case. Officer Gaydosh's testimony drew a nexus between his experience and the observations he made. Probable cause exists in this case because the knowledge Officer Gaydosh possessed was based on trustworthy information and is sufficient to warrant a man of reasonable caution in the belief that the suspect had committed or is committing a crime.
>
> The [suppression court] found that based upon the evidence presented and the totality of the circumstances the motion to suppress was denied. Additionally, the [suppression court] found that the testimony of [Officer Gaydosh] was credible. Video evidence was presented to [the suppression court] by the defense. [The suppression court] found that the video affirms the officer's testimony.

Suppression Ct. Op. at 5 (citations omitted and some formatting altered).

Following our review of the record, and in viewing the evidence presented at the suppression hearing by the Commonwealth, we discern no error by the suppression court in rejecting Appellant's claims. ***See Lear***, 290 A.3d at 715. At the suppression hearing, Officer Gaydosh testified that he initially approached Appellant after he observed what appeared to be a hand-to-hand drug transaction. Officer Gaydosh explained that he reached this conclusion based on his training and experience, which included police academy training, his job in the 24th Police District in the City of Philadelphia and having witnessing in excess of ten drug transactions per day and conducting at least forty arrests for narcotics offenses. ***See*** N.T. Suppression Hr'g, 2/18/22, at 8, 12. Based on the totality of these circumstances, we find that Officer Gaydosh had a particularized and objective basis for suspecting that Appellant was engaged in criminal activity. ***See Basinger***, 982 A.2d at 125. Therefore, on this record, we find that Officer Gaydosh had reasonable suspicion to conduct an investigative detention. ***See id.***

Moreover, the suppression hearing reveals that Appellant fled upon seeing Officer Gaydosh. N.T. Suppression Hr'g, 2/18/22, at 10. Officer Gaydosh testified that he got close to Appellant, grabbed him, and as Appellant went to the ground, "items consistent with crack cocaine and powder cocaine packaging fell out of his front hood pocket." ***Id.*** at 10-11. Officer Gaydosh placed Appellant under arrest after the alleged crack cocaine and powder cocaine packaging fell out of his pocket. ***Id.*** at 13.

We reiterate that a police officer must establish probable cause before placing an individual under arrest. **See Pakacki**, 901 A.2d at 987. With respect to probable cause, this Court has explained:

> Probable cause does not involve certainties, but rather the factual and practical considerations of everyday life on which reasonable and prudent men act. It is only the probability and not a *prima facie* showing of criminal activity that is a standard of probable cause. To this point on the *quanta* of evidence necessary to establish probable cause, the United States Supreme Court recently noted that, "[f]inely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the probable-cause decision." **Maryland v. Pringle**, 540 U.S. 366, 371 (2003) (citations omitted).

**Commonwealth v. Jones**, 121 A.3d 524, 528 n.5 (Pa. Super. 2015) (some citations omitted and formatting altered). This Court has determined that the police had sufficient probable cause to place an individual under arrest when a police officer observed the defendant remove suspected packaged narcotics from his pocket. **Commonwealth v. Luczki**, 212 A.3d 530, 548 (Pa. Super. 2019).

Here, the suppression court concluded that Officer Gaydosh was credible. **See** Suppression Ct. Op. at 5. We, therefore, decline to revisit the suppression court's credibility determinations or re-weigh the evidence presented at the suppression hearing, as we are bound by the suppression court's factual findings, instantly, as they are supported by the record. **See Lear**, 290 A.3d at 715; **see also Commonwealth v. Poplawski**, 130 A.3d 697, 711 (Pa. 2015) (reiterating that, as an appellate court, we will not upset

the credibility determinations of a suppression court, "within whose sole province it is to pass on the credibility of witnesses and the weight to be given their testimony").

Based on our review of the record, we find that the trial court's factual findings are supported by the record and that the trial court's legal conclusions are free from legal error. **See Lear**, 290 A.3d at 715. The trial court credited Officer Gaydosh's testimony that after he got close to Appellant and grabbed him, Officer Gaydosh observed "items consistent with crack cocaine and powder cocaine packaging [fall] out of [Appellant's] front hood pocket." N.T. Suppression Hr'g, 2/18/22, at 10-11. After Officer Gaydosh observed the alleged crack cocaine and powder cocaine fall out of Appellant's pocket, Officer Gaydosh had probable cause to place Appellant under arrest. **See Luczki**, 212 A.3d at 548; **Jones**, 121 A.3d at 528 n.5.

For these reasons, Appellant is not entitled to relief. For these reasons, we affirm.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/13/2023