J-A19007-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| SHRON LINDER | : | |
| | : | |
| Appellant | : | No. 1180 EDA 2018 |

Appeal from the Judgment of Sentence Entered March 5, 2018
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s):  CP-46-CR-0001350-2017,
CP-46-CR-0006389-2016

BEFORE:   PANELLA, P.J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY PANELLA, P.J.:               **FILED FEBRUARY 11, 2020**

Shron Linder challenges the judgment of sentence entered in the

Montgomery County Court of Common Pleas, following his convictions for

corrupt organizations, attempted burglary, and conspiracy to commit

burglary. On appeal, Linder argues the court erred in denying his pre-trial

motions to suppress and his motion to dismiss pursuant to Pa.R.Crim.P. 600.

He also claims insufficient evidence supported his conviction, and the

Commonwealth withheld exculpatory evidence. After careful review, we

affirm.

Linder was one of five co-conspirators in a sophisticated criminal

enterprise responsible for committing a string of burglaries in Montgomery,

_____

[*] Former Justice specially assigned to the Superior Court.

Chester, and Delaware counties.[1] This large-scale burglary ring targeted affluent homes, stealing high value and easily transportable items such as jewelry, designer purses, and cash. The police were able to link Linder and his confederates to the burglaries through cellular phone records, surveillance videos, DNA evidence, and stolen property.

The Commonwealth charged Linder and the other members of the criminal enterprise with several counts of corrupt organizations and conspiracy to commit burglary. Linder filed pre-trial motions, challenging (a) seizures of his person following car stops in Whitpain Township, Pennsylvania and Cherry Hill, New Jersey; (b) a search warrant issued by a Delaware court; (c) an alleged violation of the speedy trial rule; and (d) an alleged failure to preserve and disclose exculpatory evidence. The court addressed these motions during a three-day suppression hearing.

At the suppression hearing, the Commonwealth presented evidence of the contested car stops. First, Sergeant Peter Benedetti of the Cherry Hill, New Jersey Police Department testified he responded to an attempted home invasion and thereafter conducted a search of the neighborhood for suspicious vehicles. During the canvass, Sergeant Benedetti encountered a parked vehicle—with its lights off—in a dead-end area of the neighborhood, a quarter mile from where the attempted burglary occurred.

---

[1] The other co-conspirators involved in the criminal enterprise were Jerrel Jaynes, Kebbie Ramseur, Ralph Mayrant, and Wasim Shazad. **See** Affidavit of Probable Cause.

As he approached the vehicle, Sergeant Benedetti observed Ralph Mayrant in the driver's seat and Linder in the front passenger seat. During the encounter, neither of the men could explain their presence in the neighborhood, and so Sergeant Benedetti asked them to step out of the car. He then ran criminal background checks on the men and discovered that Linder had an active arrest warrant. Sergeant Benedetti then placed Linder under arrest. Thereafter, he entered the vehicle and, in plain view, noticed several high-end watches in the center console and passenger compartments. Officer Benedetti confiscated the watches and impounded the car.

Next, Officer Francis Rippert of the Whitpain Township, Pennsylvania Police Department testified he responded to a report of three shadowy figures in a housing development with flashlights. Following his arrival, he observed a parked car in the development, with its lights on. Officer Rippert, without activating his emergency lights, pulled alongside the vehicle.

Officer Rippert testified that he stopped merely to inquire if the occupants were lost. However, as the encounter continued, the driver, Kebbie Ramseur, and his passengers, Jerrel Jaynes and Linder, exhibited signs of nervousness and provided conflicting explanations for being in the development. Officer Rippert also noticed that Linder had reached down under the seat in an attempt to remove a police scanner and two-way radios from a bag. This suspicious activity, coupled with Linder's refusal to hand over the bag, led Officer Rippert to believe there might be a weapon inside. He then had Linder removed from the car, handcuffed, and detained near the vehicle.

Following his removal from the car, Linder was frisked by Officer Rippert for weapons, but none were found on him. The encounter eventually ended with the arrest of Ramseur and Jaynes for outstanding warrants. Linder on the other hand was free to leave.

In addition, the suppression court addressed Linder's claim that the Delaware search warrants were invalid, as they pertained to crimes committed outside of Delaware's jurisdiction. Moreover, Linder disputed that he had any involvement in the alleged burglaries in Delaware. He also argued, and the Commonwealth denied, that the criminal complaint was refiled to circumvent the speedy trial rule.

The court denied Linder's motions. Immediately after the denial of his motions, Linder proceeded to a stipulated bench trial in which the Commonwealth incorporated the affidavits of probable cause for each docket. On Docket 1350-2017, the court found Linder guilty of one count of corrupt organizations and five counts of conspiracy to commit burglary.[2] On Docket 6389-2016, Linder was found guilty of one count of attempted burglary and one count of conspiracy to commit burglary.[3] The court sentenced Linder to an aggregate sentence of 8 ½ to 17 years' imprisonment on both dockets in addition to restitution. This appeal is now properly before us.

_____

[2] **See** 18 Pa. C.S.A. §§ 911(b)(3), 3502(a)(2), and 903.

[3] **See** 18 Pa. C.S.A. §§ 3502(a)(2), 901(a), and 903.

On appeal, Ramseur presents six issues for our review:

1. [Whether] the [] Suppression Court err[ed] in denying [Linder's] motion to suppress fruits of Delaware search warrants seeking cellular telephone records allegedly associated with [Linder], where the affidavit of probable cause failed to establish a nexus between the phone records sought and the Delaware burglaries investigated [;] those search warrants lacked probable cause that [Linder] was involved in any criminal activity in the state of Delaware, and the Delaware detective lacked jurisdiction to investigate criminal activity in Pennsylvania?

2. [Whether] the [] Trial Court err[ed] in denying [Linder's] motion to dismiss pursuant to Rule 600 for the offenses originally charged in Delaware County where the Commonwealth failed to put forth a good-faith reason for the delay between the initial charging in Delaware County [;] the Commonwealth took no steps to prosecute those charges for a six-month period [;] and where the withdrawal of those charges and refiling in Montgomery County was done for the sole purpose of evading the Commonwealth's duty to bring [Linder] to trial within 365 days of filing criminal charges?

3. [Whether] the [] Suppression Court err[ed] in denying [Linder's] motion to suppress the car stop, in Cherry Hill, New Jersey and the fruits thereof, where police lacked probable cause or reasonable suspicion to seize [Linder's] person?

4. [Whether] the [] Suppression Court err[ed] in denying [Linder's] motion to suppress the car stop in Whitpain Township and the fruits thereof, where police lacked probable cause or reasonable suspicion to seize [Linder's] person?

5. [Whether] the Commonwealth commit[ed] a Brady violation in destroying video surveillance evidence viewed by and obtained by the Lower Merion Township Police Department related to the burglary at 837 Lafayette Road, which was never provided to [Linder's] counsel and which at the time of trial the attorney for the Commonwealth certified no longer existed where such evidence would, by the Commonwealth's own admission, show no evidence of a burglary of that residence?

6. [Whether] the [] Trial Court err[ed] in convicting [] [Linder] where insufficient evidence existed that [Linder] entered the

burglarized homes or conspired with others to burglarize the homes for which he was convicted at trial?

Appellant's Brief, at 4-5.[4]

We start with Linder's contention that the suppression court erred in denying his motion to suppress cellphone records, obtained pursuant to search warrants issued in the state of Delaware. More specifically, he argues the search warrants lacked probable cause because the affidavits failed to establish a nexus between the burglaries investigated in Delaware and those committed in Pennsylvania. **See** Appellant's Brief, at 8. Furthermore, he asserts that, even if probable cause existed, the Delaware Superior Court would not have jurisdiction to issue search warrants for electronically stored information pertaining to a crime outside its jurisdiction. **See id**., at 12.

In reviewing the denial of a suppression motion, we must determine whether the record supports the lower court's factual findings and whether the legal conclusions drawn from those facts are correct. **See Commonwealth v. Raglin**, 178 A.3d 868, 871 (Pa. Super. 2018). While our standard of review is highly deferential to the suppression court's factual findings and credibility determinations, we afford no deference to the court's legal conclusions, and review such conclusions *de novo*. **See Commonwealth v. Hughes**, 836 A.2d 893, 898 (Pa. 2003).

Initially, we note the Delaware affidavit of probable cause was never filed, either independently, or as an exhibit to the suppression hearing. The

---

[4] Liner concedes that his seventh issue is moot. **See** Appellant's Brief, at 21.

list of record documents transmitted pursuant to Pa.R.A.P. 1931(d) and served upon Linder does not contain a notation, or any other indication, that the affidavit was part of the certified record transmitted on appeal.[5] Furthermore, Linder fails to articulate in his brief the evidence he wants suppressed and how that evidence adversely impacts the present case.

Therefore, our review of Linder's claim is impossible due to these deficiencies. As such, we find Linder's claim here waived. **See Commonwealth v. Barge**, 743 A.2d 429, 429-430 (Pa. 1999) (holding if the absence of the evidence is attributable to the appellant's failure to comply with the relevant procedural rules, the claims will be deemed to have been waived); **see also Commonwealth v. B.D.G.**, 959 A.2d 362, 373 (Pa. Super. 2008) (finding claim waived for failure to include relevant document in the certified record).

Linder alleges next the trial court erred in denying his Rule 600 motion in which he claimed the Commonwealth violated his right to a speedy trial. He argues that 468 days of non-excludable time had elapsed between the filing of the initial criminal complaint on July 19, 2016 and the commencement of the trial on December 6, 2017. **See id**., at 13. Therefore, as more than 365

---

[5] "The purpose of Rule 1931(d) is to assist appellants by providing notice as to what was transmitted so that remedial action can be taken if necessary. Rule 1931(d) does not absolve the appellant from the duty to see that this Court receives all documentation necessary to substantively address the claims raised on appeal." **Commonwealth v. Bongiorno**, 905 A.2d 998, 1001 (Pa. Super. 2006) (*en banc*).

days of non-excludable time had passed, Linder contends the Commonwealth committed a Rule 600 violation. *See id*.

In reviewing Rule 600 issues, our standard of review of a trial court's decision is whether the trial court abused its discretion. *See Commonwealth v. Hill*, 736 A.2d 578, 581 (Pa. 1999). The proper scope of review is limited to the Rule 600 evidentiary hearing, and the findings of the trial court. *See Commonwealth v. Hunt*, 858 A.2d 1234, 1238 (Pa. Super. 2004). Further, we must view the facts in the light most favorable to the prevailing party. *See Commonwealth v. Jackson*, 765 A.2d 389, 392 (Pa. Super. 2000).

As a general rule, the Commonwealth must bring a defendant to trial within 365 days of the date the complaint is filed. *See* Pa.R.Crim.P 600(A)(2)(a). However, if trial commences more than 365 days after the filing of the complaint, a defendant is not automatically entitled to discharge pursuant to Rule 600. *See Commonwealth v. Roles*, 116 A.3d 122, 125 (Pa. Super. 2015).

Rather, a court must first account for any excludable time and excusable delay. *See Commonwealth v. Goldman*, 70 A.3d 874, 879 (Pa. Super. 2013). Excludable time is any period of delay that is attributable to the defendant or his counsel. *See Commonwealth v. Matis*, 710 A.2d 12, 16 (Pa. 1998). Excusable delay, in contrast, is any period of delay that is the result of circumstances beyond the Commonwealth's control despite its due diligence. *See Commonwealth v. Ramos*, 936 A.2d 1097, 1102 (Pa. 2007).

Our courts employ a three-step inquiry for evaluating whether there is a Rule 600 violation. We begin by calculating the "mechanical run date," which is 365 days after the complaint was filed. **See Commonwealth v. Wendel**, 165 A.3d 952, 956 (Pa. Super. 2017). Then, we determine if any excludable time and excusable delay exists. **See id**. And, finally, we add the amount of excludable time and excusable delay, if any, to the mechanical run date in order to compute the adjusted run time. **See id**

The primary point of dispute among the parties regards the calculation of the mechanical run date. Linder asserts the mechanical run date is 365 days from the filing of the Delaware County criminal complaint on July 19, 2016. **See** Appellant's Brief, 13. Conversely, the Commonwealth claims the appropriate date to start our Rule 600 analysis is the date in which the Commonwealth refiled the initial complaint in Montgomery County; January 20, 2017. **See** Appellee's Brief, at 28.

When there are multiple identical criminal complaints filed in a case, a determination must be made as to whether the Commonwealth intended to evade the timeliness requirements of Rule 600 by withdrawing the charges and then refiling them at a later date. **See Commonwealth v. Peterson**, 19 A.3d 1131, 1141 (Pa. Super. 2011). If the Commonwealth withdraws the first complaint to avoid a Rule 600 violation and refiles the charges afterwards to circumvent that rule, then the mechanical run date starts from the filing of the initial complaint. **See Commonwealth v. Claffey**, 80 A.3d 780, 786 (Pa.

Super. 2013). However, where the prosecution has not attempted an end run around the rule, the appropriate run date starts when the Commonwealth files the subsequent complaint. **See Peterson**, 19 A.3d at 1141.

The trial court did not make an explicit finding on whether the Commonwealth re-filed the criminal complaint in an effort to circumvent Rule 600. The court merely addressed Linder's argument on its face and found that various requests for continuances by defense counsel constituted excludable time sufficient to extend the adjusted run date beyond the date of the stipulated bench trial.

On appeal, Linder does not argue that the Commonwealth attempted to evade Rule 600's dictates. Nor does our review of the record indicate any evidence to support this assertion. Rather, the record is entirely consistent with the conclusion that the Commonwealth re-filed the complaint in an effort to consolidate the criminal charges that were pending in separate counties. Hence, viewing the record in a light most favorable to the prevailing party below, we conclude the stipulated bench trial that occurred on December 6, 2017, was within 365 days of January 20, 2017, the date the Commonwealth re-filed the criminal complaint. We therefore conclude the trial court did not err in denying Linder's Rule 600 motion. **See Commonwealth v. Lauro**, 819 A.2d 100, 105 (Pa. Super. 2003).

In his third and fourth issues, Linder contends the suppression court erred in denying his motions challenging the police interactions in Cherry Hill,

New Jersey and Whitpain Township, Pennsylvania. *See* Appellant's Brief, at 14, 17. Specifically, Linder contests the seizure of his person during these police encounters and the evidence acquired therefrom. Because Linder alleges the police unlawfully detained him on two separate occasions, we address his third and fourth issues contemporaneously.

First, Linder claims he was illegally detained because the police in Cherry Hill, New Jersey lacked reasonable suspicion to believe he was involved in illegal activity. *See* Appellant's Brief, at 14. In fact, Linder argues that the police-citizen interaction from its inception was an investigative detention, as he was not free to leave once Sergeant Benedetti approached the vehicle and identified himself as a police officer. *See id*., at 15. As such, he concludes the fruits of this illegal seizure should be suppressed. *See id*., at 16.

A police-citizen encounter may implicate the liberty and privacy interests of the citizen as guaranteed by the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution. *See Commonwealth v. Smith*, 172 A.3d 26, 31 (Pa. Super. 2017). Fourth Amendment jurisprudence recognizes three levels of interactions between police officers and citizens: (1) a mere encounter; (2) an investigative detention; and (3) a custodial detention. *See id*., at 32.

The first of these encounters is a mere encounter, which need not be supported by any level of suspicion, as it carries no official compulsion for a citizen to stop or respond. *See Raglin*, 178 A.3d at 871. The second, an

investigative detention, must be supported by reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not constitute an arrest. *See Commonwealth v. Baldwin*, 147 A.3d 1200, 1202 (Pa. Super. 2016). Finally, a custodial detention or an arrest must be supported by probable cause. *See Commonwealth v. Collins*, 950 A.2d 1041, 1046 (Pa. Super. 2008).

The difference between an investigative detention and a mere encounter is whether the individual was seized by the police. *See Commonwealth v. Au*, 42 A.3d 1002, 1004 (Pa. 2012). "[A] person is seized only when, by means of physical force or show of authority, his freedom of movement is restrained." *U.S. v. Mendenhall*, 446 U.S. 544, 553 (1980) (internal quotation omitted). To that end, courts must employ a totality of the circumstances approach, with no single factor dictating the ultimate conclusion as to whether there was a seizure. *See Commonwealth v. Strickler*, 757 A.2d 884, 890 (Pa. 2000).

The suppression court found that Sergeant Benedetti's initial interaction with Linder was a mere encounter rather than an investigative detention. Upon seeing a suspicious vehicle, backed into a driveway, Sergeant Benedetti approached the parked car and identified himself as a police officer. *See* N.T., Suppression Hearing, 11/30/17, at 44. For such interaction to constitute an investigative detention, there must have been some level of coercion that conveyed a demand for compliance or threat of tangible consequences from

refusal. **See Commonwealth v. Luczki**, 212 A.3d 530, 548 (Pa. Super. 2019) (stating "all law enforcement communications with a citizen do not automatically constitute detentions"). There is no evidence of any compulsion or coercion applied by Sergeant Benedetti other than identifying himself as a police officer. Accordingly, there is no evidence that Sergeant Benedetti displayed the type of authority necessary to find the encounter to have been an investigative detention from the start. **See Mendenhall**, 446 U.S. at 553.

However, we conclude that the encounter ripened into an investigative detention when Officer Benedetti removed Linder from the vehicle and placed him in one of the responding police vehicles. **See** N.T., Suppression Hearing, 11/30/17, at 32. As such, we must determine whether Officer Benedetti possessed reasonable suspicion of criminal activity to support the investigative detention at that time.

To conduct an investigative detention, police must have reasonable suspicion of criminal activity. **See Commonwealth v. Downey**, 39 A.3d 401, 405 (Pa. Super. 2012). Reasonable suspicion arises when an officer has reason to believe that criminal activity is afoot. **See Commonwealth v. Cook**, 735 A.2d 673, 677 (Pa. 1999). Even innocent factors, viewed together, may arouse reasonable suspicion that criminal activity is afoot. **See id**., at 676. Moreover, "in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion

or hunch, but to the specific reasonable inferences he is entitled to draw from the facts in light of his experience." ***Terry v. Ohio***, 392 U.S. 1, 27 (1968).

The certified record supports the suppression court's conclusion that Sergeant Benedetti had reason to suspect that criminal activity was afoot during the encounter. Sergeant Benedetti testified at the suppression hearing that Linder was unable to offer any explanation as to why he was parked on a dimly lit, dead-end street in close proximity to the location of the attempted burglary. ***See*** N.T., Suppression Hearing, 11/30/17, at 31, 39-40. He also testified that, upon approaching the car, he ascertained that the hood of the vehicle was warm, indicating to him that it had recently been driven. ***See id***., at 47. This was significant as police set up a perimeter in the neighborhood so no vehicles could exit the area. ***See id***., at 23. Therefore, based on the totality of the circumstances, Officer Benedetti had reasonable suspicion to detain Linder, while he ran a warrant check. And so Linder's challenge here is meritless.

Second, Linder asserts the police in Whitpain Township, Pennsylvania lacked reasonable suspicion to conclude he was in possession of a weapon or might gain control of one. ***See*** Appellant's Brief, at 17-18. Therefore, he concludes the fruits of this detention should be suppressed. ***See id***., at 19.

A police officer is entitled to conduct a limited search of an individual for weapons if the officer observes suspicious conduct which leads the officer to reasonably believe that criminal activity is afoot and that the person may be

- 14 -

armed and dangerous. *See Commonwealth v. Hemingway*, 192 A.3d 126, 129-130 (Pa. Super. 2018) (citations omitted). To conduct a protective frisk for weapons, the police must have reasonable suspicion. *See Commonwealth v. Simmons*, 17 A.3d 399, 403 (Pa. Super. 2011). "In order to establish reasonable suspicion, the police officer must articulate specific facts from which he could reasonably infer that the individual was armed and dangerous." *Commonwealth v. Mack*, 953 A.2d 587, 590 (Pa. Super. 2008) (citation omitted). Further, the facts indicating that an individual is armed and dangerous must be viewed under the totality of the circumstances. *See Commonwealth v. Holmes*, 14 A.3d 89, 95 (Pa. 2011).

Here, the record supports the conclusion that under the totality of the circumstances presented, Officer Rippert had reasonable suspicion to believe that Linder was armed and dangerous. First, Linder was seen reaching down under his seat and manipulating a bag, which appeared to contain a police scanner and two-way radios. *See* N.T., Suppression Hearing, 12/04/17, at 84-85. Second, when Officer Rippert asked to see the bag, Linder tossed it across the seat. *See id*., 85. This led Officer Rippert to believe that his safety was at risk. In light of the totality of the circumstances, we conclude that Officer Rippert articulated specific facts from which he could reasonably infer that Linder may have been reaching for a weapon. *See Commonwealth v. Cooper*, 994 A.2d 589, 592-593 (Pa. Super. 2010). The suppression court therefore properly denied Linder's motion to suppress.

Next, Linder alleges the Commonwealth committed a **Brady** violation by failing to preserve and disclose video surveillance of a home invasion. Specifically, Linder argues that the Commonwealth had an obligation to disclose this evidence as it would have been favorable to him. **See** Appellant's Brief, at 19-20. As such, Linder claims he suffered prejudice because of the Commonwealth's failure to preserve the video and disclose it to him. **See id**., at 20.

Under **Brady v. Maryland**, 373 U.S. 83 (1963), the prosecution's failure to divulge exculpatory evidence is a violation of a defendant's Fourteenth Amendment due process rights. **See Commonwealth v. Ly**, 980 A.2d 61, 75 (Pa. 2009). In order to establish a **Brady** violation, the burden is on the defendant to plead and prove that "(1) the prosecutor has suppressed the evidence; (2) the evidence, whether exculpatory or impeaching, is helpful to the defendant; and (3) the suppression prejudiced the defendant." **Commonwealth v. Carson**, 913 A.2d 220, 244 (Pa. 2006).

The evidence alleged to have been withheld by the Commonwealth must have been "material evidence that deprived the defendant of a fair trial." **Commonwealth v. Paddy**, 15 A.3d 431, 450 (Pa. 2011) (citation omitted). "Favorable evidence is material, and constitutional error results from its suppression by the government, if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to

undermine confidence in the outcome." ***Commonwealth v. Johnson***, 815 A.2d 563, 573 (Pa. 2002) (citation omitted).

Although ***Brady*** requires disclosure by the government of evidence that is both exculpatory and material, our Supreme Court has limited the Commonwealth's disclosure duty. The Commonwealth is not required to deliver its entire file to defense counsel. ***See Ly***, 980 A.2d at 75. As such, defendants do not have a general right of discovery in criminal cases. ***See Commonwealth v. Counterman***, 719 A.2d 284, 297 (Pa. 1998). The criminally accused only have a right to evidence that is favorable to them and, if suppressed, would deprive them of a fair trial. ***See Ly***, 980 A.2d at 75.

In the present case, we agree with the suppression court that Linder's ***Brady*** claim was meritless. ***See*** Trial Court Opinion, 6/25/18, at 26-27. Here, the record confirms that the surveillance video was not destroyed, as Linder asserted in his brief. ***See*** N.T. Suppression Hearing, 12/4/17, at 48-49. Rather, it was in the homeowner's possession the entire time. ***See id***., at 49. Thus, this evidence was equally available to Linder's defense counsel, and so, as the court determined, either side could have subpoenaed it. ***See id***., at 52; ***see also Commonwealth v. Spotz***, 896 A.2d 1191, 1248 (Pa. 2006) (stating "it is well established that no ***Brady*** violation occurs where the parties had equal access to the information. . . .") (citation and internal quotations omitted).

Moreover, despite not having custody of the video, the Commonwealth accepted Linder's stipulation that the video did not show a burglary. *See* N.T., Suppression Hearing, 12/4/17, at 53. Even so, it is impossible to conceive how this video alone would have changed the outcome of Linder's stipulated bench trial since the video is neither exculpatory nor material. *See Carson*, 913 A.2d at 244; *see also Johnson*, 815 A.2d at 573. Therefore, Linder is not able to establish that the Commonwealth committed a *Brady* violation here. For that reason, Linder is not entitled to relief.

In his final issue, Linder argues the trial court erred in finding that the evidence was sufficient to support his convictions, especially his corrupt organizations conviction. *See* Appellant's Brief, at 20-21.

Our standard of review for a challenge to the sufficiency of the evidence is to determine whether, when viewed in a light most favorable to the verdict winner, the evidence at trial and all reasonable inferences therefrom are sufficient for the fact-finder to find every element of the crime beyond a reasonable doubt. *See Commonwealth v. Dale*, 836 A.2d 150, 152 (Pa. Super. 2003). "The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." *Commonwealth v. Bruce*, 916 A.2d 657, 661 (Pa. Super. 2007) (citation omitted).

"The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." *Id*. (citation omitted). Any doubt

raised as to the defendant's guilt is to be resolved by the trier of fact. **See id**. "As an appellate court, we do not assess credibility nor do we assign weight to any of the testimony of record." **Commonwealth v. Kinney**, 863 A.2d 581, 584 (Pa. Super. 2004) (citation omitted). Therefore, we will not disturb the verdict "unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." **Bruce**, 916 A.2d at 661 (citation omitted). Furthermore, a mere conflict in the testimony of the witness does not render the evidence insufficient because it is within the province of the fact finder to determine the weight to be given to the testimony and to believe all, part, or none of the evidence. **See Commonwealth v. Baskerville**, 681 A.2d 195, 200 (Pa. Super. 1996).

Initially, we note that Linder raised challenges to the sufficiency of the evidence underlying his convictions for attempted burglary and conspiracy to commit burglary in his Pa.R.A.P. 1925(b) statement. **See** Appellant's Pa.R.A.P. 1925(b) Statement, 6/01/2018, at 2. However, Linder's brief does not advance any argument regarding his conspiracy to commit burglary conviction and, as a result, we will not address this issue. **See Commonwealth v. Boxley**, 948 A.2d 742, 749 n.7 (Pa. 2008) (refusing to address claim raised in a Pa.R.A.P. 1925(b) statement, but subsequently abandoned in an appellate brief). Moreover, Linder's argument regarding his attempted burglary conviction is underdeveloped and otherwise without citation to the record or to any legal authority. **See Commonwealth v. LaCava**, 666 A.2d 221, 228

n.9 (Pa. 1995) (holding that issues not mentioned or developed in an appellate brief are waived). Therefore, his claim challenging the evidence supporting his attempted burglary conviction is waived. *See Commonwealth v. Gibbs*, 981 A.2d 274, 281 (Pa. Super. 2009).

Additionally, Linder failed to raise a sufficiency argument regarding his corrupt organizations conviction in the concise statement of errors complained of on appeal. *See* Pa.R.A.P. 1925(b). "Any issues not raised in a Rule 1925(b) statement will be deemed waived." *Commonwealth v. Lord*, 719 A.2d 306, 309 (Pa. 1998). Consequently, it is waived. *See id*.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/11/20