J-S05028-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ERIK PATTERSON | : | |
| | : | |
| Appellant | : | No. 1252 EDA 2020 |

Appeal from the Judgment of Sentence Entered February 7, 2020
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0008949-2018

BEFORE:  BOWES, J., LAZARUS, J., and McLAUGHLIN, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED MAY 4, 2021**

Erik Patterson appeals from the judgment of sentence, entered in the Court of Common Pleas of Philadelphia County, following his conviction by a jury of possession of a firearm by a prohibited person.[1]  After careful review, we affirm.

The trial court set forth the relevant facts of the case as follows:

On the afternoon of October 31, 2018, Officer Anthony Hurley[, an eleven-year veteran of the Philadelphia police force,] received a radio call that there was an individual wearing a black jacket and blue pants with a gun in the area of a drug treatment facility on 2558 North Front Street in Philadelphia.  When Officer Hurley arrived on [the] scene, a security guard and two other individuals were pointing at [Patterson], who was walking nearby on Huntingdon Street, and informed Officer Hurley that [Patterson] had pointed his gun at the security guard.  Officer Hurley approached [Patterson], who was wearing a black jacket and blue pants, in his police vehicle and asked [Patterson] to come over to his vehicle.  [Patterson] complied[,] and Officer Hurley patted [Patterson] down in order to determine whether [he] had a gun on his person.  Office Hurley asked

_____

[1] 18 Pa.C.S.A. § 6105.

[Patterson] what had happened, to which [Patterson] responded that he had gotten into an argument with the security guard because the drug treatment facility had refused to give him treatment.

Officer Hurley then placed [Patterson] in the backseat of the police vehicle so that he could go to speak with the witnesses. Before leaving to speak with the witnesses, however, Officer Hurley noticed [Patterson] fidgeting in the back seat of the vehicle. Officer Hurley then opened the door to the police vehicle and observed [Patterson] attempting to hide a gun magazine under the back seat. Officer Hurley recovered the magazine, which contained seven live rounds of .9mm bullets, and then handcuffed [Patterson]. Subsequently, Officer Hurley noticed a firearm holster on the sidewalk approximately 15 to 20 feet from where Officer Hurley had originally stopped [Patterson]. Officer Hurley also discovered a loaded firearm on top of a box in a trashcan approximately 5 feet from where the firearm holster was recovered. The ammunition in the magazine fit and functioned in the gun that was recovered. Thereafter, [Patterson], who had previously committed an enumerated felony that prohibited him from possessing a firearm, was placed under arrest.

Trial Court Opinion, 8/7/20, at 2-3 (citations to notes of testimony omitted).

Patterson was charged with three violations of the Uniform Firearms Act (VUFA), 18 Pa.C.S.A. §§ 6105, 6106, and 6108. Prior to trial, Patterson filed a motion seeking to suppress physical evidence uncovered from the stop on the following grounds: he was searched and arrested without probable cause; he was subjected to a stop and frisk on less than reasonable suspicion; and he was searched and arrested without a warrant. Omnibus Motion, 1/30/19, at 1. After a hearing before the Honorable Charles Ehrlich on May 31, 2019, the court denied the suppression motion.

Subsequently, on June 13, 2019, Patterson filed a motion *in limine* seeking to exclude "all out-of-court statements [including any reference to a 911 call for a person with a gun], descriptions [of his appearance, clothing, and direction of

travel from the Computer Aided Dispatch (CAD)], and identifications . . . including pointing [motions] made by unidentified individuals outside 2558 N. Front Street." Motion *In Limine*, 6/13/19, at 1-2.[2] Prior to trial, the court heard argument on Patterson's motion *in limine*, after which the court denied the motion, concluding that the evidence was admissible pursuant to the present sense impression exception to the rule against hearsay. N.T. Motion *In Limine* Hearing/Jury Trial, 8/20/19, at 17-18, 21-22.

Following a two-day trial in August 2019, before the Honorable Glenn B. Bronson,[3] a jury convicted Patterson of the above-stated VUFA offense.[4] On February 7, 2020, the court sentenced Patterson to 10-20 years' incarceration.[5] Patterson filed a post-sentence motion, which the court denied on June 9, 2020. Patterson then filed a timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. He presents the following issues for our consideration:

_____

[2] On May 8, 2019, Patterson also filed a motion *in limine* seeking to exclude "any reference at trial to a 'black ski mask.'" Motion *In Limine*, 5/8/19. On August 19, 2019, the court granted that motion. Order, 8/19/19.

[3] For reasons unknown to this Court, the case was transferred from Judge Ehrlich to Judge Bronson for trial.

[4] The Commonwealth *nolle prossed* the section 6106 and 6108 charges and proceeded to trial only on the section 6105 offense.

[5] Patterson was also held in contempt of court for his threatening behavior towards the trial judge during his sentencing hearing. He was sentenced to a term of 3-6 months' incarceration for contempt. He has not appealed from that sentence.

(1) Did not the court err by failing to suppress evidence for each of the following reasons:

    (a) Where the officer arrived on the scene in a marked patrol car with lights and siren activated, then pursued [Patterson] down the street in his car, exited his car with gun drawn, told [Patterson] to approach the car, frisked [Patterson] on the hood of the car and then questioned [him], was not [Patterson] questioned while in custody without being given his *Miranda*[6] warnings, and should not [Patterson's] statements have been suppressed, and

    (b) Where [Patterson] was then placed in the back of a police car which could not be opened from the inside, was not [Patterson] under arrest in the absence of probable cause, and was not the gun clip subsequently obtained from the back of the police car the product of that illegal arrest and/or the product of forced abandonment due to that illegal arrest, and should not that evidence have been suppressed?

(2) Did not the court err by allowing hearsay statements from persons on the scene (to wit, that [Patterson] had a gun and that [Patterson] pointed the gun at the security guard) to be presented at trial during the testimony of the officer for each of the following reasons:

    (a) Where the Commonwealth established no exception for the hearsay, was not the admission of this hearsay improper, and

    (b) Even if a portion of this hearsay was otherwise admissible, was not the statement that [Patterson] pointed the gun at the security guard more prejudicial than probative pursuant to Pa.R.E. 403, under the circumstances of the case and the sole charge at issue at trial, and did not the court err by not excluding this portion of the hearsay statements at trial?

_____

6 *Miranda v. Arizona*, 384 U.S. 436 (1966).

- 4 -

Appellant's Brief, at 4-5.[7]

In his first issue, Patterson argues that Officer Hurley frisked and questioned him on the street without first giving him his **Miranda** warnings. Moreover, Patterson claims that when he was placed in the back of a police cruiser, he was effectively "under arrest in the absence of probable cause" and any evidence recovered from the police car should have been suppressed because it "was the product of an illegal arrest and/or the product of forced abandonment due to that illegal arrest." Appellant's Brief, at 24.

Our standard of review on appeal of the denial of a motion to suppress is to determine whether the certified record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings. **Commonwealth v. Gould**, 187 A.3d 927, 934 (Pa. Super. 2018). It is well-established that "[i]n making this determination, we are to consider only evidence of the prosecution's witnesses and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted." **Commonwealth v. Goodwin**, 333 A.2d 892, 895 (Pa. 1975). If the record supports the factual findings of the suppression court, we will reverse only if there is an error in the legal conclusions drawn from those

_____

[7] In his post-sentence motion to reconsider his sentence, Patterson argued that mitigating evidence militated in favor of reducing his sentence. **See** Post-Sentence Motion to Reconsider Sentence, 2/18/20. While Patterson did not raise either of his appellate issues in his post-sentence motion, it is well-established that "any issue raised before or during trial is deemed preserved for appeal whether or not the defendant chooses to raise the issue in a post-sentence motion." **See** Pa.R.Crim.P. 720, Comment.

- 5 -

factual findings. *Gould*, *supra* at 934. Finally, the scope of review for a suppression issue is limited to the record available to the suppression court. *In re L.J.*, 79 A.3d 1073, 1089 (Pa. 2013).

At the suppression hearing, Officer Hurley testified that it was standard police protocol to arrive on the scene of a "Person with gun, priority 1" call with lights and sirens activated. N.T. Suppression Hearing, 5/31/19, at 9. Moreover, Officer Hurley testified, and the trial court found as a fact, that when he arrived on the scene, within two minutes of the radio call, witnesses told the officer that Patterson had just pointed a gun at a security guard. *Id.* at 6, 23, 42-43. In addition, Officer Hurley testified that when he looked in the direction that the witnesses had pointed, he noticed Patterson fit the physical description of the individual described in the CAD. *Id.* at 21-23. At that point, where Officer Hurley believed Patterson had just pointed a gun at someone, he had reasonable suspicion to conduct an investigatory detention, stop Patterson with his gun drawn, and briefly pat him down. *See Commonwealth v. Dix*, 207 A.3d 383, 388 (Pa. Super. 2019) (police had reasonable suspicion to stop and perform brief pat-down search of defendant, with guns drawn, where officers observed suspect fitting description from tip when they arrived at location).

Patterson claims that after Officer Hurley frisked him on the hood of the car and then questioned him, he was subjected to a custodial interrogation

without first being given his **_Miranda_**[8] warnings, and, thus, his statements should have been suppressed. We disagree.

A custodial interrogation occurs when there is a "questioning initiated by the police after a person has been taken into custody or otherwise deprived of his or her freedom of action in any significant way." **_Commonwealth v. Clinton_**, 905 A.2d 1026, 1032 (Pa. Super. 2006) (citations and emphasis omitted). "There are two separate requirements, custody and interrogation, that have to be found in order for **_Miranda_** to apply." **_Commonwealth v. Whitehead_**, 629 A.2d 142, 144 (Pa. Super. 1993). Additionally, in order to determine whether the detention is investigative or custodial, a court considers a variety of factors, including: (1) the basis for detention; (2) the duration of detention; (3) the location of detention (public or private); (4) whether the suspect was transported against his will (how far, why); (5) the method of detention; (6) any show, threat or use of force; and (6) the investigative methods used to confirm or dispel suspicions. **_Commonwealth v. Smith_**, 172 A.3d 26, 32 (Pa. Super. 2017) (citation omitted).

Here, Officer Hurley testified that when he stopped Patterson and asked him to approach his vehicle, "[he] asked him if he had a gun" before patting him down for the officer's safety and then "[s]tarted talking to him [about] what happened over there briefly." N.T. Suppression Hearing, 5/31/19, at 10; **_Id._** at 11-12 ("I just asked him what's going on, why am I getting called here, etcetera.

---

[8] **_Miranda v. Arizona_**, 384 U.S. 436 (1966).

As far as, like, what's your side for the story."). This initial inquiry was permissible and did not require ***Miranda*** warnings. ***See Commonwealth v. Kondash***, 808 A.2d 943 (Pa. Super. 2002) (dictates of ***Miranda***, even during custodial interrogations, do not attach where police have reason to fear for their well-being and ask questions to ensure their safety and not to elicit incriminating responses); ***see also Miranda***, ***supra*** at 477-78 (general on-the-scene questioning as to facts surrounding crime or other general questioning in fact-finding process does not present compelling atmosphere inherent in custodial interrogation setting); ***Commonwealth v. Kloch***, 327 A.3d 375, 380 (Pa. Super. 1974) (same). Additionally, Officer Hurley had his gun holstered when he asked Patterson these questions, he exhibited no threat of force towards Patterson, Patterson was not restrained by the officer in any way, and the questioning occurred in public during daylight. ***Smith***, ***supra***. Thus, we conclude that, under a totality of the circumstances, Officer Hurley's initial questioning of Patterson in the present case was not a "custodial interrogation" such that the officer was required to first administer Patterson his ***Miranda*** warnings. ***Clinton***, ***supra***.

Next, we do not find that when Officer Hurley placed Patterson in his police cruiser that the investigative detention transformed into a custodial arrest, and thus, required the suppression of all evidence seized thereafter.[9]

_____

[9] We find that the trial court credited the officer's statement, that upon his arrival at the scene, witnesses told him that Patterson had pointed a gun at the security guard. Thus, under the facts of this case, we are not presented with an illegal

*(Footnote Continued Next Page)*

In **Commonwealth v. White**, 516 A.2d 1211 (Pa. Super. 1986), our Court held that defendants who were placed in a police cruiser for a short time, pending investigation of a suspected robbery, were not arrested. Where the defendants were detained at the scene of the initial encounter, were not transported anywhere, and less than five minutes elapsed between the defendants being placed in the police car and being told to exit, the defendants' brief detention in police car was reasonable and did not "transform[] an otherwise proper investigative detention into an illegal arrest." **Id.** at 1217.

We find this case on all fours with **White**. Officer Hurley placed Patterson in his cruiser for a brief period of time in order to investigate the matter further, the encounter took place on a public street in the middle of the afternoon, Patterson was not transported anywhere, the detention took place at the scene of the initial encounter, and Patterson was not physically restrained or formally placed under arrest. Under these circumstances, where Officer Hurley wished to ensure his and any other officers' safety while they continued to investigate the CAD and statements by on-the-scene witnesses that Patterson possessed a gun and pointed it at a security guard, we cannot say that Officer Hurley's actions were unreasonable. **Cf. Commonwealth v. Turner**, 772 A.2d 970, 972 (Pa.

_____

detention. **Cf. Commonwealth v. Hicks**, 208 A.3d 916, 951 (Pa. 2019) (where officer clarified on cross-examination that information he was provided did not suggest defendant "had 'pointed' [] handgun at anyone, or that he was 'threatening somebody with it,' but, instead, that 'just somebody was holding a gun, along that nature," considering totality of circumstances, facts did "not support finding of reasonable, articulable suspicion that [defendant] was engaged in any manner of criminal activity").

Super. 2001) (en banc) (where inebriated defendant was placed involuntarily in police car and subsequently asked incriminating questions without being given *Miranda* warnings, Court concluded defendant could not be questioned without first being given *Miranda* warnings because "the combination of uniformed police officers placing a suspect in a police car for an unknown amount of time and subsequently asking him potentially incriminating questions rises to the level of a custodial interrogation").[10] Thus, because Patterson was the subject of an investigative detention while he was inside the police cruiser, the gun magazine discovered at his feet in the car was not the product of an "illegal arrest/or the product of forced abandonment due to an illegal arrest," Appellant's Brief, at 4, and suppression was not warranted. *See Commonwealth v. Jones*, 378 A.2d 835 (Pa. 1977) ("While we do not approve of the use of excessive restraints upon a person subjected to investigative detentions, we note that every *Terry* stop involves both a stop and a period of detention during which the suspect is not free to leave but is subject to the control of the police officer.").

In his final issue on appeal, Patterson contends that the trial court improperly permitted Officer Hurley to testify regarding the "statements from persons on the scene (to wit, that [Patterson] had a gun and that [he had]

_____

[10] Although Officer Hurley did not specify how many minutes, in toto, Patterson remained inside the police car, based on the fact that the officer returned to the vehicle soon after placing Patterson in the car, noticing a gun holster on the sidewalk near the car, and Patterson moving "furtively" in the car, we deduce that he was in the vehicle for mere minutes. N.T. Suppression Hearing, 5/31/19, at 11; *see also id.* at 45-46 (trial judge finding that Patterson "had been stopped *briefly*, as part of investigation") (emphasis added).

pointed the gun at the security guard)" where those statements were inadmissible hearsay that do not fit within any hearsay exception, and where its admission was more prejudicial than probative. Appellant's Brief, at 35. Specifically, Patterson complains that the Commonwealth failed to provide "independent corroborating evidence that the [witnesses] actually perceived the event." Pa.R.E. 803(1).

Instantly, the trial court permitted Officer Hurley to testify about the witnesses' statements pursuant to the present sense impression exception to the rule against hearsay. At the motion *in limine* hearing, the court noted the following:

> You see somebody who just pointed a gun at someone who's about to run into the community, that's not testimonial to say ["]that's him.["] That's not there to make a criminal case, that's to protect the public. And I think it would be extraordinary for a [c]ourt to find something different under the circumstances. So if it happened immediately after he's still observable and they say to the police, ["]That's him,["] do you have a case where that was done and they said that that was not admissible? Where on the scene people are pointing and saying, ["]That's him.["] Because I want to look at it. I will. I'll always look at the law. I don't want to make a mistake.
>
> But this does not sound like testimonial to me, so I don't see a **Crawford**[11] issue. It does sound like a present sense impression.

---

[11] **Crawford v. Washington**, 541 U.S. 36 (2004) (when prosecution seeks to introduce "testimonial" out-of-court statement into evidence against criminal defendant, Confrontation Clause of Sixth Amendment requires: (1) witness who made statement is unavailable; and (2) defendant had prior opportunity to cross-examine witness). Although Patterson raised a **Crawford** claim during his argument on his motion *in limine*, Patterson has neither included it in his Rule 1925(b) statement nor argued it in his brief. N.T. Motion *In Limine*/Jury Trial, 8/20/19, at 16-17 (arguing that witnesses' statements evolved from non-testimonial to testimonial once threat to security guard had ceased). Thus, this issue is abandoned for purposes of appellate review. **See** Pa.R.A.P. 1925(b)(3)(iv).

They're describing within moments something that they saw. That's the guy that just pointed a gun. Right? That's what they would say, that's the man who pointed a gun?

* * *

I think it's clearly a present sense impression. I don't see a **Crawford** issue. If your motion *in limine* is to exclude it, it's denied. I'm going to let it in. I'm going to let in what they said, because they're describing what they saw. That's the guy I saw pointing the gun; that's the present sense impression.

I mean, like I said, if you have a case that says that's not so, but I'm familiar with the cases that you're discussing. And this is not like a 911 call. This is an observable person on the scene. Maybe they didn't get the name, but it's not like an anonymous person. It's somebody that you know is on the scene. When you get a phone call, it could be because the person in the house said to you, I just looked out the window and saw this, so you're giving complete hearsay.

But this is inherently more reliable when you have somebody who's on the scene [in] the presence of the person who allegedly had the gun. It's much more reliable circumstances. The timing is such that, you know, present sense impression, we've had them go out to a lot longer period of time and that's somebody describing what they just saw. It seems to be multiple corroboration [sic], including the fact that there are people who are[—]more than one person is saying it and that the person is in their presence right there and then it happened right afterwards.

And I can't imagine that this would be considered to be testimonial when somebody is making off with a gun into the community, and it's exactly what the [c]ourts have said is not considered to be testimonial. It's the police responding to an emergency. It's different than the cases that you're quoting. So that's my ruling.

N.T. Motion *In Limine*/Jury Trial, 8/20/19, at 17-18, 21-22 (italics added).

"An appellate court's standard of review of a trial court's evidentiary rulings[,] which include rulings on the admission of hearsay[,] is [for an] abuse

of discretion."[12] ***Commonwealth v. Rivera***, 238 A.3d 482, 492 (Pa. Super. 2020) (citation omitted). "However, whether a defendant has been denied his right to confront a witness under the Confrontation Clause of the Sixth Amendment to the United States Constitution, made applicable to the States via the Fourteenth Amendment, is a question of law, for which the [S]uperior [C]ourt's standard of review is *de novo* and its scope of review is plenary." ***Id.***

Hearsay is an out-of-court statement offered for the truth of the matter asserted. ***See*** Pa.R.E. 802. Generally, hearsay is inadmissible unless it falls within one of the exceptions to the hearsay rule. ***Commonwealth Sandusky***, 203 A.3d 1033, 1054 (Pa. Super. 2019) (citations omitted). One such hearsay exception is the present sense impression under Pa.R.E. 803(1). Pursuant to Rule 803(1), "[a] statement describing or explaining an event or condition, made while or immediately after the declarant perceived it[,]" is "not excluded by the hearsay rule, regardless of whether the declarant is available as a witness."

---

[12] Evidence is admissible if it is relevant—that is, if it tends to establish a material fact, makes a fact at issue more or less probable, or supports a reasonable inference supporting a material fact—and its probative value outweighs the likelihood of unfair prejudice. ***Commonwealth v. Clemons***, 200 A.3d 441, 474 (Pa. 2019) (citations omitted). Where the information that Patterson allegedly pointed a gun at a security guard creates the reasonable suspicion needed to conduct the instant investigatory detention, ***see Hicks***, ***supra***, such relevant evidence was clearly more probative than prejudicial where it was directly relevant to determining who in the area possessed a firearm. ***See*** Pa.R.E. 403 (court may exclude relevant evidence if probative value outweighed by danger of prejudice); ***see also Commonwealth v. Hairston***, 84 A.3d 657, 666 (Pa. 2014) (court not required to "sanitize the trial and eliminate all unpleasant facts from the jury's consideration" where facts are relevant to issues and form part of history and development of events and offense for which defendant charged).

Pa.R.E. 803(1). "When the declarant is unidentified, the proponent shall show by independent corroborating evidence that the declarant actually perceived the event or condition." *Id.*

Patterson claims that there was no corroborative evidence showing that the witnesses "actually perceived the event," and, thus, the statements were not present sense impressions. We disagree. Here, Officer Hurley testified, and the trial court found as a fact, that he arrived on the scene no more than two minutes after receiving the CAD dispatch. N.T. Suppression Hearing, 5/31/19, at 21. Immediately upon his arrival, Officer Hurley came upon three witnesses—two women and a uniformed security guard—who pointed in Patterson's direction and told the officer that Patterson had just pointed a gun at the security guard. *Id.* at 6, 10. Officer Hurley then saw Patterson just down the street and proceeded to investigate.

Under such circumstances, especially where the trial court credited Officer Hurley's account upon arriving at the scene, we find that the prosecution showed, by independent corroborating evidence, that the witnesses "actually perceived the event." *Commonwealth v. Cunningham*, 805 A.2d 566, 573 (Pa. Super. 2002) (for purposes of present sense impression, "[t]he observation must be made at the time of the event or so shortly thereafter that it is unlikely that the declarant had the opportunity to form the purpose of misstating his observation") (citations omitted). Moreover, as the Commonwealth points out in its brief, Patterson, himself, also provided corroborating evidence when he told Officer Hurley that he had been in an altercation with the security guard at

the treatment center. N.T. Suppression Hearing, 5/31/19, at 12. Despite the fact that Patterson, for obvious reasons, did not tell Officer Hurley that he threatened the guard with a gun, his information corroborates that witnesses saw him in a dispute with the security guard at the relevant time period.

Accordingly, we conclude that the trial court did not abuse its discretion in permitting Officer Hurley to testify regarding the witnesses' statements where they qualify as present sense impressions.[13] **Rivera**, **supra**.

Judgment of sentence affirmed.

Judge McLaughlin joins this Memorandum.

Judge Bowes concurs in the result.

_____

[13] Alternatively, the witnesses' statements, via Officer Hurley's testimony, could be admitted as a way to explain the officer's course of conduct in pursing Patterson, frisking him and detaining him during the investigatory detention. **Commonwealth v. Dent**, 837 A.2d 571, 579 (Pa. Super. 2003) ("It is . . . well[-]established that certain out-of-court statements offered to explain a course of police conduct are admissible. Such statements do not constitute hearsay since they are not offered for the truth of the matters asserted; rather, they are offered merely to show the information upon which the police acted."). **See also Commonwealth v. Fant**, 146 A.3d 1254, 1265 n.13 (Pa. 2016) ("According to the 'right-for-any-reason' doctrine, appellate courts are not limited by the specific grounds raised by the parties or invoked by the court under review, but may affirm for any valid reason appearing as of record.").

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/04/2021